No. 83-326

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

LARS LEWIS OLSEN, MARY ANN OLSEN,
ROBERT JOSEPH OLSEN, and JOYCE
OLSEN,

          Plaintiffs and Appellants,

-vs-

EVERED L. McQUEARY, RAMONA McQUEARY,
ANDREW BECK and DONALD W. BECK,

          Defendants and Respondents.

APPEAL FROM: District Court of the Third Judicial District,
In and for the County of Powell,
The Honorable Robert J. Boyd, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        Johnson, Skakles & Kebe; Greg J. Skakles, Anaconda,
        Montana

    For Respondents:

        Loble & Pauly; C. Bruce Loble, Helena, Montana

Submitted on Briefs: June 14, 1984

Decided: August 30, 1984

Filed: AUG 30 1984

_Ethel M. Harrison_
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The plaintiffs appeal from the judgment of the Third Judicial District Court, Powell County, which decreed the respective water rights of plaintiffs and defendants in Upper Fred Burr Creek and Lower Fred Burr Creek channel near Deer Lodge, Montana. We affirm the decision of the District Court.

The plaintiffs own property in Powell County in the Lower Fred Burr Creek drainage. Some of these lands are owned by Lars and Mary Ann Olsen, husband and wife, and some by Robert and Joyce Olsen, husband and wife.

Defendant Andrew Beck owns property uphill from the Olsens in the Upper Fred Burr Creek drainage. Defendant Donald Beck is the guardian of Andrew Beck, who has been adjudged an incompetent. Evered and Ramona McQueary, husband and wife, through a management agreement, are presently responsible for managing the Andrew Beck property. The McQuearys claim no water right in this action, and were dismissed as defendants by the District Court.

Upper Fred Burr Creek is a natural stream arising in a hilly area east of the Beck property and flowing in a well defined channel through the Beck property. However, the creek disappears into the ground near the Beck farmstead, except in times of flood. The Lower Fred Burr Creek channel runs in a northwesterly direction and water flows in the channel on an intermittent basis. The District Court found that Upper Fred Burr Creek and Lower Fred Burr Creek channel arise from separate sources of water and except in times of flood, Upper Fred Burr Creek contributes no water

to the Lower Fred Burr Creek channel. The court also found that Upper Fred Burr Creek is not a tributary to either Lower Fred Burr Creek channel or the Deer Lodge River. Any water that flows through the Lower Fred Burr Creek channel is either foreign water imported via irrigation ditches from Cottonwood Creek and Baggs Creek or waste, drainage and return flow accumulations from irrigation on adjacent ranches.

Bob and Joyce Olsen have a decreed sixty inch water right out of Cottonwood Creek with an 1882 priority date. Louis Smith and Sam Beck own land in the Upper and Lower Fred Burr Creek drainages, between the respective ranches of plaintiffs and defendants. Louis Smith and Sam Beck also have decreed rights from Cottonwood Creek. Bob and Joyce Olsen, Louis Smith and Sam Beck together import more than 3,500 miner's inches of Cottonwood Creek water into the drainage area of Lower Fred Burr Creek channel. The ranches of Louis Smith and Sam Beck are uphill from the Olsens' land and any waste, drainage and return flow waters from irrigation on these ranches flow into the lower Fred Burr Creek channel and are available for use by plaintiffs. The District Court found that plaintiffs, Robert and Joyce Olsen, had appropriated and diverted sixty miner's inches of this water with a 1954 priority date. The court found that plaintiffs Lars and Mary Ann Olsen appropriated and diverted fifty miner's inches with a priority date of 1965.

In 1872, defendants' predecessor, Grant, appropriated and diverted 250 miner's inches of Upper Fred Burr Creek waters. Grant's successor filed a declaration of water right in 1885 in the county office of the clerk and recorder

in conformance with statutory law. Upper Fred Burr Creek is a high mountain stream whose principal flow occurs in the spring. Defendants' irrigated lands are located on steep hillsides with shallow topsoil laying over coarse rock and gravel. Successful growing of crops on this land requires repeated flood irrigation.

The District Court found that 1.5 miner's inches per acre were required to successfully irrigate this land. There is seldom sufficient water in Upper Fred Burr Creek to irrigate all of defendants' land. Thus, Beck and his predecessor have consistently used the entire amount of Upper Fred Burr Creek waters available for irrigation and stock water purposes, except in times of flood.

The District Court found that the defendant and his predecessors had appropriated and diverted 250 miner's inches from Upper Fred Burr Creek with a priority date of 1872, and 1,010 miner's inches from Upper Fred Burr Creek with a priority date of 1915.

Plaintiffs filed suit in 1979, alleging wrongful use of the waters of Fred Burr Creek by defendants and alleging that plaintiffs had superior rights to the water, at least to the waters in excess of 250 miners inches. Plaintiffs asked for an adjudication of rights to the waters of Fred Burr Creek and appointment of a water commission to measure and distribute the water in accordance with the court's decree. Defendants in their answer claimed superior rights to all waters of Fred Burr Creek. The case was heard by Judge Boyd, who entered a decree in April of 1983. The decree awarded defendants 1,260 miner's inches from Upper Fred Burr Creek. Plaintiffs Robert and Joyce Olsen were

-4-

awarded sixty miner's inches from Lower Fred Burr Creek channel, and plaintiffs Lars and Mary Ann Olsen were awarded fifty miner's inches from Lower Fred Burr Creek channel.

The plaintiffs' first issue on appeal is whether the findings of fact and conclusions of law of the District Court are supported by substantial credible evidence. We first address a subsidiary issue raised by plaintiffs: Did the District Court err in adopting verbatim much of the proposed findings of fact and conclusions of law tendered by the respondents?

In the past this Court has discouraged the trial court's wholesale adoption of proposed findings and conclusions of the prevailing party. In re Marriage of Wolfe (Mont. 1983), 659 P.2d 259, 261, 40 St. Rep. 211, 213; Tomaskie v. Tomaskie (Mont. 1981), 625 P.2d 536, 538-39, 38 St.Rep. 416, 419. However as we stated in Kowis v. Kowis (Mont. 1983), 658 P.2d 1084, 1088, 40 St.Rep. 149, 154: "[W]here. . . findings and conclusions are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and are supported by the evidence, they will not be overturned simply because the court relied upon proposed findings and conclusions submitted by counsel." Here, the findings and conclusions of the trial court were comprehensive and pertinent to the issues presented for decision, providing a solid basis for the court's decision.

The remaining question is whether the findings and conclusions of the District Court are supported by substantial credible evidence.

The court found that the Fred Burr Creek drainage actually consisted of two separate streams, Upper Fred Burr

Creek and Lower Fred Burr Creek channel. The court also determined that Upper Fred Burr Creek is not a tributary to Lower Fred Burr Creek channel. These findings provided the basis for the court's eventual decree of water rights to the parties. In particular, the plaintiffs maintain that findings of fact six and seven, quoted below, are clearly erroneous and require reversal.

> "6. That from the totality of the evidence as confirmed by the Defendants' expert, Charles C. Bowman, Upper Fred Burr Creek is a natural stream arising in a hilly area easterly from the Andrew A. Beck property, flowing in a well-defined channel through the Beck property until it disappears into the ground, except in times of flood, at or near the Beck farmstead, occupied by the McQuearys as their residence.

> "7. The Lower Fred Burr Creek channel is a separate source of water supply from Upper Fred Burr Creek and arises generally in the North Half of Section 27 of Township 8 North, Range 9 West where it flows as an intermittent stream in a northwesterly direction."

The standard of review long employed by this Court requires only that the findings and conclusions of the District Court be supported by substantial credible evidence. In re Marriage of Pickering (Mont. 1984), 678 P.2d 1146, 1147, 41 St.Rep. 617, 618, "Findings will not be overturned unless there is a clear preponderance of evidence against them, recognizing that evidence may be weak or conflicting, yet still support the findings." Jensen v. Jensen (Mont. 1981), 629 P.2d 765, 768, 38 St.Rep. 927, 930.

The challenged findings of the trial court are largely, although not entirely, based upon the testimony of the respondents' expert witness, Charles C. Bowman. Bowman is a retired professor of agricultural engineering from

Montana State University who has specialized for a number of years in Montana water law, irrigation and drainage problems. Professor Bowman testified that Upper Fred Burr Creek is a drainage completely separate from Lower Fred Burr Creek channel. He testified that except in times of flood, Upper Fred Burr Creek disappears into the ground on the defendants' land, well uphill from plaintiffs' land. The upper creek goes underground where it flows into a large and very porous gravel deposit underlain by consolidated hardpan. Professor Bowman testifed that Lower Fred Burr Creek channel arises a considerable distance downslope from where the upper creek disappears, and is fed by water imported by ditches from Baggs and Cottonwood Creeks, and by return flow and drainage waters from field irrigation on ranches above plaintiffs' land. The testimony of Professor Bowman and others indicated that in excess of 3,500 miner's inches of foreign water was introduced each season into the Lower Fred Burr drainage through irrigation ditches.

This testimony was corroborated by an American Stabilization and Conservation Service map and a United States Geological Survey contour map of the Fred Burr drainages, both of which were entered into evidence without objection. Both maps clearly depict a distinct break between the two stream courses along the east boundary of Section 26, Township 8 North, Range 9 West. Professor Bowman also testified that the Powell County Water Resources Survey book, which he helped prepare, reflected a clear division between the two drainages. The District Court took judicial notice of the Survey book, which is published by the State Engineer's Office in Helena, Montana.

We hold that the trial court's findings of fact six and seven are supported by substantial credible evidence and will not be disturbed.

The plaintiff also objects to the District Court's finding that the defendant established an appropriation based on beneficial use of 1,010 miner's inches, with a priority date of June, 1915. No objection was made to the court's finding in favor of the defendant of an appropriation of 250 miner's inches with a priority date of May, 1872. The court's findings make it clear that the total award of 1,260 miner's inches of water to defendant was intended by the court to recognize that Andrew A. Beck, and his grantors and predecessors in interest have consistently diverted and beneficially used _all_ of the available waters of Upper Fred Burr Creek since 1915. The defendant presented four witnesses at trial who testifed at length regarding the historical use of water from Upper Fred Burr Creek on the Beck ranch. All testified that the Beck ranch has used all of the waters of Upper Fred Burr Creek for irrigation. The oldest witness, Mr. Soren Beck, testified that this practice was established as early as 1915. Viewing the record in a light most favorable to the prevailing party, it is evident that the District Court's finding of a 1915 appropriation of 1,010 miner's inches by the defendant is supported by substantial credible evidence. In re Marriage of Pickering (Mont. 1984), 678 P.2d 1146, 41 St.Rep. 617; Overton v. Overton (Mont. 1983), 674 P.2d 1089, 40 St.Rep. 2047.

The plaintiffs next contend that the District Court erred in sustaining the objections of defendants to certain

-8-

testimony given in deposition by Alfred A. Hansen. Defendants objected to Hansen's testimony on grounds that it was speculative, immaterial, incompetent and irrelevant. Hansen's testimony focused on events occurring in the Fred Burr drainage area from 1905-1917, when Hansen was from eight to twenty years of age. Much of Hansen's testimony was speculative, and he plainly implied several times during the course of the deposition that his testimony was based on vague recollections from his childhood. Hansen's testimony concerning irrigation practices on Lars Olsen's land is irrelevant because, as the deposition eventually reveals, the land Hansen was discussing is not owned by Lars Olsen at all. Rather, it is part of the Kohrs Ranch, now owned by the federal government. Having carefully reviewed Hansen's deposition, we find no error by the trial court in sustaining the objections.

Finally, the plaintiffs argue that the District Court erred in sustaining the defendants' objections to introduction of plaintiffs' exhibits I and J. Exhibit I is a warranty deed to plaintiff Lars L. Olsen which purports to convey a decreed right to 500 miner's inches of Fred Burr Creek waters. We note that since this case is the only adjudication of the Fred Burr drainage to date, the deed in question could not have conveyed a decreed water right. Exhibit J is a deed in Lars L. Olsen's chain of title which purports to convey a water right of 500 miner's inches in Fred Burr Creek. Both exhibits were apparently introduced to establish a 500 miner's inch water right in favor of Lars L. Olsen.

Plaintiff Lars L. Olsen argues that Exhibit J is

admissible because it constitutes a substitute for a notice of appropriation under section 89-810, RCM 1947. Such a notice, "when duly made, shall be taken and received in all courts of this state as *prima facie* evidence of the statements therein contained." Section 89-814, RCM 1947.

We find that the deeds do not qualify as notices of appropriation under section 89-810, RCM 1947. Even if we were to consider these deeds as notices of appropriation pursuant to section 89-810, they are fatally defective and inadmissible as evidence of an appropriation because they are executed with unsworn acknowledgements, rather than with verified affidavits as required by section 89-810. "This Court has strictly construed the provisions of section 89-814. We have held that any nonconformance with section 89-810 renders the notice of appropriation inadmissible as evidence." Holmstrom Land Co. v. Meagher Cty. Newlan Creek Water District (1979), 185 Mont. 409, 427, 605 P.2d 1060, 1070.

Plaintiff Lars L. Olsen also claims that Exhibit I should have been admitted because it established that Lower Fred Burr Creek channel carried enough water to provide Olsen with 500 miner's inches of water. Olsen contends that Exhibit I would therefore tend to establish that Upper Fred Burr Creek is a tributary to Lower Fred Burr Creek channel, rather than a separate drainage. This is a dubious assertion, since the recitation of a water right in the deed makes no reference to the source of the waters claimed. An overwhelming volume of the testimony presented at trial indicated that Upper Fred Burr Creek is isolated from Lower Fred Burr Creek channel, and that the water available in

Lower Fred Burr Creek channel consists of foreign, waste, drainage and return flow waters. We need not address the technical question of admissibility where the effect of the disallowed exhibit is minimal in relation to the overall weight of evidence. The findings of the trial court would undoubtedly be unaffected by admission of Exhibit I. We will not reverse or remand a ruling of the District Court where, as here, it is clear that the eventual decision will remain unchanged. Kirby Co. of Bozeman, Inc. v. Employment Security Division of the Montana State Dept. of Labor and Industry (Mont. 1980), 614 P.2d 1040, 1043, 37 St.Rep. 1255, 1258.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____
_____
_____
Justices