No. 88-30

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

DAVID TURNER and PATRICIA M.
TURNER,

Plaintiffs and Appellants,

-vs-

STEVE W. FERRIN and DEBRA A.
FERRIN,

Defendants and Respondents.

---

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and for the County of Custer,
The Honorable A. B. Martin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

J. B. Wheatcroft, Miles City, Montana

For Respondent:

Bruce Brown; Brown & Huss, Miles City, Montana

---

Submitted on Briefs:   March 31, 1988

Decided:  May 24, 1988

Filed:  **MAY 2 4 1988'**

*Ethel M. Harrison*
_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This is an appeal from a judgment and final order denying plaintiffs/appellants David and Patricia Turners' (Turners) motion to amend findings of fact and conclusions of law issued by the District Court of the Sixteenth Judicial District Court, Custer County, Montana. Following a bench trial, the court disallowed rescission of a contract for deed entered into by the Turners with defendants/respondents Steve and Debra Ferrin (Ferrins). We affirm.

Appellants raise two issues for our review:

1. Whether the District Court erred in failing to find the Turners were entitled to rescission?

2. Whether the court erred by declaring a forfeiture when Ferrins could not provide title?

In the judgment, issued on October 21, 1987, the District Court found that the sale of property involved in this case was a sale in gross with an approximate six percent acreage variation that was not a material nor substantial lack of consideration that would entitle the Turners to rescission. The court found the Turners guilty of laches, and that the Ferrins had given due notice of default that was not cured. Finally, the court ordered the Turners to cure the default within thirty days of entry of the judgment at which time the Ferrins were to deliver a deed to the Turners and that failure would result in termination of the contract with the Ferrins entitled to immediate possession of the property.

The Turners filed consolidated post-trial motions moving for amendment of the findings of fact, conclusions of law and judgment or in the alternative, a new trial on

2

October 30, 1987. It is from this final order denying these motions and the judgment that the Turners appeal.

Steve and Debra Ferrin owned an irrigated ranch near Miles City, Montana. The size of the parcel is in dispute, either approximately 96 acres or, as the Turners claim, as small as 90 acres. A buy-sell agreement, prepared by Steve Ferrin, who is also a real estate broker, was signed by the Turners on September 13, 1982. The total purchase price was $230,000 with a $100,000 down payment paid previous to the closing on October 12, 1982. A contract for deed was executed by all parties. The Turners were represented by counsel. Attached to the contract for deed as exhibit "A" was a description of the real property as follows:

<u>Township 8 North, Range 48 East, M.P.M.</u>
Section 5:
> N½SW¼ and NW¼SE¼, <u>LESS</u> that portion described as Tract 3, containing 19.26 acres, more or less, in accordance with the Certificate of Survey filed for record as Document No. 60202 in Envelope No. 191 of the Plat Cabinet, records of Custer County, Montana, and <u>LESS</u> that portion of the NW¼SW¼ which lies north and west of the right-of-way of the Burlington Northern Railroad (formerly Northern Pacific Railroad Company).

Section 6:
> That portion of the NE¼SE¼ which lies south and east of the right-of-way of the Burlington Northern Railroad (formerly the Northern Pacific Railroad Company).

> Containing 96.73 acres, more or less.

This description was exactly the same as that contained in the buy-sell agreement. Paragraph nine of the contract for

3

deed referred to title insurance and stated the property was subject to easements and rights of way of record and other visible easements. However, the warranty deed placed in escrow from the Ferrins to the Turners contained no reservations or exceptions for any servitudes. The warranty deed did contain the exact description of the property as in the contract for deed and the buy-sell agreement.

The Turners moved onto the property in October of 1982 and Patricia Turner testified that they thereafter spent $26,815.69 on improvements on the property. Both annual payments of $16,133.97 were timely made in 1983 and 1984, however, the 1985 payment was not made. The Turners and Ferrins entered into an accommodation agreement on December 24, 1985 extending the time to make the annual payment but the default was not cured.

Prior to the scheduled date of forfeiture, the Turners filed an action for declaratory judgment attempting to have the contract declared a mortgage thereby entitling them to a right of redemption and occupancy. The Ferrins were granted summary judgment on this issue. The Turners then filed for relief under Chapter 11 in Bankruptcy Court. The Turners pursued rescission of the contract in Bankruptcy Court but the cause was remanded to the Montana State District Court because of mandatory abstention under Section 28 U.S.C. 1334(c)(2).

An amended complaint was filed March 19, 1987 in which it was alleged for the first time that an acreage shortfall was present in the sale of the property. The Turners employed a survey company to survey the property and the company's report disclosed that less than 96.73 acres existed. The amended complaint alleged that no exceptions were made in the warranty deed for a right of way. It was alleged that a portion of the property actually contained a

4

right of way for a state highway and this easement was "on file and of record." The complaint also alleged that due to the fact the premises described in the warranty deed did not describe the property as "an aliquot part as defined by the subdivision laws of the State of Montana and is otherwise not subject to a certificate of survey" the deed was "ineligible for filing for record if the warranty deed were delivered to plaintiffs."

A bench trial was held September 18, 1987 and both parties presented testimony and exhibits. Although the Turners presented the survey they had recorded, they did not call the surveyors themselves. The Ferrins also presented two unofficial surveys that were not recorded and did not call a surveyor. The Turners' survey shows the tract contained 90.73 acres. This survey gave the recorded right of way for U.S. Highway 10 as a boundary rather than the Burlington Northern Railroad right of way stated in the description.

The Ferrins' exhibits were also admitted into evidence. These exhibits show, and Steve Ferrin testified to, the possible mistake that occurred in this case. The Ferrins' exhibit number two shows the property involved as an undivided 115.99 acre tract, only a portion of which was subject to the contract for deed. The Ferrins' exhibit number one shows tract three as a 19.26 acre plot that had been sold earlier by the Ferrins. The remainder of the property, 115.99 minus the 19.26 acres, is the unit that was sold to the Turners. It was in this manner that the figure, 96.73 acres, was determined.

The District Court adopted the Ferrins' proposed findings of fact and conclusions of law. The court stated that the sale was one "in gross" because the contract provided for the sale of 96.73 acres "more or less" and the

5

six percent acreage variation was not material. Further, the court concluded, the Turners did not prove "by a preponderance of the evidence that there was in fact any acreage discrepancy."

This Court's standard of review of a lower court's findings of fact is whether the findings are supported by substantial evidence. Where conflicting evidence is presented, the trial court will not be overturned unless there is a clear preponderance of the evidence against the findings. Taylor et al. v. Cannaday (Mont. 1988), 749 P.2d 63, 66, 45 St.Rep. 102, 105. We have held numerous times that a trial court's verbatim adoption of all proposed findings and conclusions is acceptable if they are comprehensive and detailed, are supported by the evidence before the court, and are not clearly erroneous. Olsen v. McQueary (Mont. 1984), 687 P.2d 712, 716, 41 St.Rep. 1669; R.L.S. v. Barkhoff (Mont. 1983), 674 P.2d 1082, 1085, 40 St.Rep. 1982.

The Turners' argument that the District Court erred is based on two theories. First, that the presence of the easement not referred to in the warranty deed entitles them to the equitable remedy of rescission of the contract for deed and return of all the money they have paid. Secondly, the Turners contend forteiture was not properly granted and they are entitled to rescission because the title to be conveyed by the Ferrins was unmerchantable as it was unrecordable.

Initially, we note that this sale indeed seems to be for a "sale in gross." The Ferrins appropriately point out that this Court has stated in Hardin v. Hill (1967), 149 Mont. 68, 74, 423 P.2d 309, 312, that "[g]enerally when land is sold in gross, a variation in acreage from what the parties had contemplated is not grounds for rescission or

6

other relief." There was sufficient evidence to support the finding of the District Court that the property was a sale in gross. However, not only does this rule require determination of whether the property in question is sold in gross, where the relief requested is equitable in nature as is rescission, we should also consider whether the acreage shortfall is material.

In Parcel v. Myers (Mont. 1985), 697 P.2d 92, 93, 42 St.Rep. 352, the words "in gross" were not actually used in the sale document but we held the district court properly found a bulk real estate transaction occurred and the property was sold "in gross." The purchaser in Parcel, "looked at the property at least three (3) times;" walked the property boundary which was fenced on its borders; and was told "you are looking at what you get." No conversation about price per acre occurred and negotiations centralized around the total purchase price and buildings. Here, the Ferrins fixed a purchase price of $240,000 and the Turners bargained for and received a unit price of $230,000. At trial, no evidence was ever presented that a per acre price was negotiated. Most importantly, David Turner admitted that he inspected the premises at least three times and that he was shown the boundaries.

The Ferrins' counsel has directed the Court to an annotation in 1 A.L.R.2d 9 dealing with relief to be granted when there is a mistake in the quantity of land sold. This annotation suggests a number of factors to be used to determine whether a sale is "in gross" or by the acre. The importance of making this determination is that the general rule calls for refusal of relief, in the absence of fraud, where the sale is in gross. 1 A.L.R.2d at 19.

The annotation suggests a sale in gross is favored where the statement of price is a lump sum as in this case,

7

rather than a statement of price as a specified rate per acre. 1 A.L.R.2d at 28-38.

> Some courts even go so far as to say that the presence of the words "more or less" makes a prima facie showing or raises the presumption that the sale is one in gross.
>
> The reason for this tendency is very easy to detect. The use of the words "more or less" excludes the assumption of an exact number of acres and makes it clear that the precise dimensions of the property are not of the essence of the contract, the parties either not knowing themselves the exact number of acres in the land, or purposely not intending to state it.

1 A.L.R.2d at 47-48. Finally, and this is applicable to the case at bar due to the wording of the description, use of the term "more or less" tends to show the sale is "in gross."

Although we do not hold that the use of the language "more or less" alone creates a "sale in gross," we do hold that it is sufficient, combined with the observation of the property by the Turners, the sale price as a negotiated lump sum, and the lack of a statement of price per acre, to create a "sale in gross."

We next look to determine whether the alleged variation of acreage in this case was sufficiently material or substantial to hold that the District Court erred in denying rescission. Under § 28-2-1711, MCA, rescission may occur only in certain circumstances:

> A party to a contract may rescind the same in the following cases only:
>
> (1) if the consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to

8

> whom he rescinds or of any other party to
> the contract jointly interested with such
> party;
>
> (2) if, through the fault of the party
> as to whom he rescinds, the consideration
> of his obligation fails in whole or in
> part . . .

Section 28-2-1711, MCA.

In this instance, the District Court stated in its order that there was not a "material or substantial lack of consideration by the [Ferrins]." No fraud, duress, menace, or undue influence was alleged or proven by the Turners. In Carey v. Wallner (Mont. 1986), 725 P.2d 557, 44 St.Rep. 1778, we discussed the grounds for rescission under this statute. As in Carey, the resolution of this issue turns on whether there was a mistake and/or failure of consideration. Consideration is defined as:

> [a]ny benefit conferred or agreed to be
> conferred upon the promisor by any other
> person, to which the promisor is not
> lawfully entitled, or any prejudice
> suffered or agreed to be suffered by such
> person, other than such as he is at the
> time of consent lawfully bound to suffer,
> as an inducement to the promisor is a
> good consideration for a promise.

Section 28-2-801, MCA. Here, the Turners received the property. There was never any statement that they needed exactly 96.73 acres or that this was the most important object, the essence, of the sale. At any rate, the District Court properly determined there was no lack of consideration.

In Carey, we held that rescission of the contract was proper because the Careys had purchased the property with the express intention of operating an adult foster care home. Upon further investigation, it was discovered that the area in which the property was located was zoned such that a

9

foster home would violate the zoning ordinances. Therefore, we stated the Careys did not receive what they bargained for. The Turners received what they bargained for, 96.73 acres more or less. It is important to note that this property was both irrigated and dry land and the acreage discrepancy could have been a mistake due to the differences in acreage stated on surveys Steve Ferrin had and the survey done for Dave Turner. The Turners' survey, although recorded, is only important if he could have proved the mistake was material.

We stated in Carey, that rescission of the contract was proper because of material mistake. The Court considered § 28-2-409, MCA, which states:

> [m]istake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in:
>
> . . .
>
> (2) belief in the present existence of a thing material to the contract which does not exist or in the past existence of such a thing which has not existed.

We went on to state:

> A mistake is an unintentional act or omission arising from ignorance, surprise, or misplaced confidence. (Citation omitted.) The mistake must be material, or, in other words, so substantial and fundamental as to defeat the object of the parties. (Emphasis added.)

Carey, 725 P.2d at 560-561.

In this case, assuming the alleged discrepancy exists, the missing acreage was approximately six percent of the total sale as the District Court noted. Equity will provide a remedy when by mutual mistake the land contains materially more or less acreage than the parties believed. A slight

10

disparity will justify equitable relief if the sale is by the acre, but, if the sale is in gross a great disparity must exist to authorize relief. Steward v. Jones (Tex.Ct.App. 1982), 633 S.W.2d 544, 546. In Steward, the court granted rescission of the contract when the sellers discovered that the property they sold contained forty-eight percent more property than what they believed.

Ordinarily, when a sale of land is in gross, deficiencies of ten to twenty percent and even more than thirty percent have not been considered sufficiently material to entitle a buyer to relief. Seyden v. Frade (Nev. 1972), 494 P.2d 1281, 1283, citing 1 A.L.R.2d 9. The annotation states that rescission is granted only where the acreage deficiency is material:

> In a number of jurisdictions the general rule appears to be that equity will rescind a contract for the sale of land in gross because of a mutual mistake of the parties as to the quantity of the land, where the deficiency is a material one, even if the statement as to area is followed by the term "more or less." Generally, such material deficiency has been said to exist only where the discrepancy closely approached, or exceeded, 50 percent, though this rule is not uniform.

1 A.L.R.2d at 127.

In this case, we find that the District Court did not err in denying the Turners a rescission on grounds there was not a material or substantial lack of consideration.

Further, it is clear that the Turners were put on notice to look for easements of record and visible easements by paragraph nine of the contract for deed. The agreed facts in the pretrial order state that the right of way for U.S. Highway 10 is a property interest of record and on file with

11

the Custer County Clerk and Recorder. David Turner admitted that he was aware of the road and that he was shown the property boundaries. Under these circumstances this statement is sufficient to at least put the Turners, who were represented by counsel, on notice to inquire as to possible easements.

Finally, the Turners argue they are entitled to rescission, or at a minimum that the District Court erred in granting a forfeiture under the contract for deed because merchantable title could not have been conveyed by the Ferrins due to failure to have a proper description according to the cases of McCarthy v. Timberland Resources, Inc. (Mont. 1985), 712 P.2d 1292, 1294, 42 St.Rep. 2016; and Timberland Resources, Inc. v. Vaught (Mont. 1987), 738 P.2d 1277, 44 St.Rep. 1054. These cases turned on interpretation of § 76-3-401, MCA, which requires a survey prior to the recording of property "one thirty-second or larger aliquot parts of a United States government section." We will not address the above interpretation as was attempted in both McCarthy, and Vaught. However, both cases are distinguishable because there was a refusal to record by the county in McCarthy and a challenge by the county attorney as to the recording practice in Vaught.

No challenge to or refusal of recording has occurred in this case. The Turners allege that the warranty deed could not be recorded but have not proven this as fact and the allegation alone does not make the title unmerchantable. As was said by this Court, "[t]he crux of the issue is whether the property is identifiable. '[D]eeds . . . must contain an adequate description of the property to be conveyed.'" Vaught, 738 P.2d at 1279.

In Sharbono v. Darden (Mont. 1986), 715 P.2d 433, 436, 43 St.Rep. 400, we held that a vendee is excused from failure

to make a balloon payment because the vendor might never be in the position to convey title because the vendor had a condition precedent of satisfaction of a mortgage of the property prior to receiving clear title. We recently reiterated this standard in Stark v. Borner (Mont. 1987), 735 P.2d 314, 318, 44 St.Rep. 717:

> This Court is concerned, however, about the lack of any findings regarding the sellers' ability to convey title after they accelerated payment. The established rule of law is that a vendor cannot, while unable to tender good title, enforce a forfeiture provision of a contract on default of the vendee. (Citation omitted.)
>
> ". . . the mere failure of the purchasers to make the deferred payments did not ipso facto entail a forfeiture of their rights under the contract, and, when the vendor elected to give the notice which would effect that result, the forfeiture could only be declared if, at the time she demanded final payment, she could convey marketable title. (Citations omitted.)" Silfvast v. Asplund, 93 Mont. at 595, 20 P.2d at 636.
>
> This rule was enunciated most recently in Sharbono v. Darden (Mont. 1986), 715 P.2d 433, 43 St.Rep. 400, where we agreed with the Fourth Judicial District's finding that the vendee's "failure to make the balloon payment when due is excused by Sharbono's [vendors] inability to convey title."

Stark, 735 P.2d at 318.

The Turners admit "[a] survey such as was undertaken by [the] Turners, at their own expense, might enable [the] Ferrins to be able to deliver a recordable deed . . . " The District Court noted that the Ferrins were willing to pay for the cost of the survey in its findings of fact and

13

conclusions of law. It was not shown by a preponderance of the evidence to the District Court that the deed involved was truly defective and that title was not merchantable. Absent proof of the fact that the Ferrins did not have merchantable title, the District Court did not err in granting a forfeiture in this case.

The judgment and order of the District Court are affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices