No. 98-485

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 299

297 Mont. 145

991 P.2d 440

CEDAR LANE RANCH, INC.,

A Montana Corporation,

Plaintiff and Respondent,

v.

WILFORD W. LUNDBERG and HEBER

LUNDBERG and their heirs; CARL NELSON,

his heirs and assigns, CARL NELSON RANCH

COMPANY and all persons, unknown, claiming or

who might claim any right, title, estate, or interest

in or lien or encumbrance upon the real property

described in the complaint adverse to plaintiff's

ownership or any cloud upon plaintiff's

title thereto, whether such a claim or possible

claim be present or contingent.

Defendants and Appellants.

---

APPEAL FROM: District Court of the Third Judicial District,

In and for the County of Granite,

The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Douglas J. DiRe, Dayton Law Firm, Anaconda, Montana

For Respondent:

Nancy K. Moe, Harold V. Dye, Dye & Moe, Missoula, Montana

---

Submitted on Briefs: January 28, 1999

Decided: December 6, 1999

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

1. ¶ Cedar Lane Ranch, Inc. (Cedar Lane Ranch), brought an action to quiet title to the following parcel of disputed property lying in Granite County:

   All of that portion of the Northeast Quarter of the Northeast Quarter (NE¼NE¼) of Section 26, Township 10 North, Range 13 West, M.P.M., Granite County, Montana lying West of Montana Highway 1 running between Drummond and Anaconda, Montana.

2. ¶ Carl Nelson Ranch Company (Carl Nelson Ranch) appeals from the order of the Third Judicial District Court, Granite County, granting summary judgment to Cedar Lane Ranch and quieting title to the disputed property. We affirm.

3. ¶ Prior to 1994, both the Cedar Lane Ranch and the Carl Nelson Ranch believed that only seven of the forty acres in the NE¼NE¼ of Section 26 were located on the west side of Montana Highway 1 and owned by the Cedar Lane Ranch; both ranches also believed that the remaining thirty-three acres in the NE¼NE¼ of Section 26 were located east of the highway and owned by the Carl Nelson Ranch. However, pursuant to a right-of-way survey performed by the Montana Department of Highways in 1994, it was discovered that "more than seven acres and as many as thirteen acres" of the NE¼NE¼ of Section 26 may in fact be located on the west side of Montana Highway 1. The disputed property in this quiet title action is that portion of the NE¼NE¼ of Section 26 in <u>excess</u> of seven acres lying west of Montana Highway 1.

4. ¶ In its quiet title action, Cedar Lane Ranch named as defendants Wilford and Heber Lundberg, title holders of record to the disputed property and predecessors in interest to the Cedar Lane Ranch, and Carl Nelson and the Carl Nelson Ranch. Although the Lundbergs were served notice by publication, they failed to appear and default judgment was entered against them. However, Carl Nelson Ranch appeared at the quiet title action and, based upon the results of the 1994 highway survey, asserted a counterclaim to an indeterminate six acres in the disputed property. Cedar Lane Ranch subsequently moved for summary judgment on the complaint and the counterclaim, and its motion was granted by the District Court.

Issues

5. ¶ There are essentially two issues on appeal, restated as follows:

6. ¶ (1.) Did the District Court err in concluding that the disputed property was transferred in gross and, therefore, that the actual acreage of the conveyance was immaterial?

7. ¶ (2.) Did the District Court err in alternatively concluding that summary judgment was proper because Cedar Lane Ranch holds title to the disputed property by adverse possession?

## Factual and Procedural Background

8. ¶ In 1892, Albert Tinklepaugh (Tinklepaugh), the common predecessor in interest, obtained a patent to the lands that today comprise both the Cedar Lane Ranch and the Carl Nelson Ranch. Since the time of Tinklepaugh's first conveyance, a common boundary existed between the two ranches in the form of a county road that is today Montana Highway 1; the Cedar Lane Ranch lies to the west of the highway, and the Carl Nelson Ranch to the east.

9. ¶ In 1902, Tinklepaugh deeded a parcel of land to James McGowan, a predecessor in interest to the Cedar Lane Ranch. This parcel of land was bounded by a county road (now Montana Highway 1) to the east, and was bounded by section lines to the north, south, and west. By deed, Tinklepaugh described the conveyed land as follows: "About seven acres of land off of the west side of the N.E.¼ of the N.E.¼ of Sec. 26 Township 10 N. Range 13 West. Said piece of land being west of the foot of the hill, where county road now runs." This parcel has never been severed by sale or otherwise from the holdings of the Cedar Lane Ranch, and has been fenced-in and continuously "ranched" since the 1950s.

10. ¶ In 1916, Tinklepaugh conveyed his land on the <u>east side</u> of the county road to Carl Nelson, purportedly including all of Tinklepaugh's remaining ownership in the NE¼NE¼ of Section 26. The deed described this conveyance as follows:

The Northwest quarter (NW¼) of Section Twenty-five (25), the <u>North-east quarter (NE¼) of the North-east quarter (NE¼) of Section Twenty-six (26) except that portion of approximately seven (7) acres off of the west side, all lying on the west side of the public highway</u>, and about seven (7) acres of land off of the east side of the South-east quarter (SE¼) of the South-east quarter (SE¼) of Section Twenty-three (23) all in Township Ten (10) North, Range Thirteen (13) West of Montana, Meridian, Montana, containing Two Hundred Acres, more or less. [Emphasis added.]

11. ¶ In 1944, McGowan's heirs sold what is today the entire Cedar Lane Ranch, including the disputed property, to the Lundbergs. Although the disputed property has never been severed from the holdings of the Cedar Lane Ranch, the legal description of the disputed property was inadvertently omitted from the chain of title beginning in 1950. In 1950, the Lundbergs contracted with Woodrow and Billie Wallace to sell the land that today comprises the Cedar Lane Ranch; the legal description of the disputed property was omitted from that agreement. The contract was paid in 1958, at which time the Lundbergs conveyed the ranch by warranty deed to the Wallaces; that deed also omitted the legal description of the disputed property. In 1972, the Wallaces conveyed the land by warranty deed to the Cedar Lane Ranch, again omitting the legal description of the disputed property. These oversights were not discovered until the 1994 highway survey indicated the acreage discrepancies in Tinklepaugh's transfers.

12. ¶ In 1964, Carl Nelson deeded his land to the Carl Nelson Ranch. The legal description in the warranty deed purported to convey the following parcel: "Section 26: NE¼NE¼ except that portion of approximately 7 acres off of west side, all lying on the west side of the public highway."

13. ¶ The District Court quieted title to the disputed acreage in the Cedar Lane Ranch. In quieting title, the court ruled that: (1) the Carl Nelson Ranch did not possess any title interest in the disputed property since the parcel west of the highway had been transferred to the Cedar Lane Ranch "in gross" and, therefore, that the parties had assumed any risk of an acreage variance; and that (2) even if the Carl Nelson Ranch had a title interest in the disputed property, the Cedar Lane Ranch had obtained title to that parcel through adverse possession.

## Discussion

14. ¶ (1.) Did the District Court err in concluding that the disputed property was transferred in gross and, therefore, that the actual acreage of the conveyance was immaterial?

15. ¶ We review a district court's entry of summary judgment *de novo*. Motarie v. Northern Mont. Joint Refuse Disposal Dist. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785. When we review a district court's award of summary judgment, we apply the same analysis as the district court based upon Rule 56, M.R.Civ.P. See Bruner v.

Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903.

16. ¶ In its order, the District Court reasoned as follows:

Whether the size of the parcel is 7 acres or 13 acres is not important as to the outcome of this case. When Mr. Tinklepaugh conveyed what is now the disputed parcel he stated "about 7 acres" after identifying the area by boundaries, being the foot of the hill and the county road.

"A contract of sale by the acre is one wherein a specified quantity is material. Under such a contract the purchaser does not take the risk of any deficiency and the vendor does not take the risk of any excess. The contract of sale by the tract or in gross is one wherein boundaries are specified, but quantity is not specified, or if specified, the existence of the exact quantity specified is not material; each party takes the risk of the actual quantity varying to some extent from what he [or she] expects it to be." Parcel v. Myers, 214 Mont. 225, [228,] 697 P.2d 92[, 94] (1985) [( quoting 77 Am. Jur. 2d Vendor and Purchaser § 90)].

Mr. Tinklepaugh conveyed the property in gross after identifying the boundaries. The exact quantity is not material as each party takes the risk of the actual quantity varying.

17. ¶ Carl Nelson Ranch disputes the District Court's conclusion that "[a]n inaccurate estimation of the size of the parcel is not a genuine issue of material fact." The court's conclusion was premised on the fact that Tinklepaugh had conveyed what is now the disputed property "after identifying the area by boundaries, being the foot of the hill and the county road." In opposition to Cedar Lane Ranch's motion for summary judgment, Carl Nelson Ranch introduced two affidavits indicating that both ranches had believed, prior to the 1994 highway survey, that the Cedar Lane Ranch owned only seven acres of the NE¼NE¼ of Section 26. Carl Nelson Ranch thus contends that genuine issues of material fact exist as to the size of the disputed property.

18. ¶ In response, Cedar Lane Ranch argues that the liberal use of "words of estimation" in the relevant conveyances strongly suggest that the transfers were in gross, and that, pursuant to Parcel and pertinent rules of construction, the District Court properly concluded that the amount of acreage at issue is immaterial because of the consistent references to fixed, permanent boundaries in the conveyances. We agree.

19. ¶ "Generally when land is sold in gross, a variation in acreage from what the parties

had contemplated is not grounds for rescission or other relief." Hardin v. Hill (1967), 149 Mont. 68, 74, 423 P.2d 309, 312. Although words of estimation alone do not necessarily create a sale in gross, Cedar Lane Ranch avers that where, as here, words of estimation in a deed are combined with a negotiated lump sum sale price and an absence of any reference to a price per acre, a sale in gross may be created. See Turner v. Ferrin (1988), 232 Mont. 146, 151, 757 P.2d 335, 338.

20. ¶ In Turner, the purchasers sued for rescission based on an "acreage shortfall" which was discovered by a subsequent survey of the property. See Turner, 232 Mont. at 147-49, 757 P.2d at 336-37. Based on evidence showing that the purchasers had paid a lump sum purchase price of $230,000 for the property without any deed reference to a price per acre, that the purchasers had been personally shown the property boundaries prior to the sale, and that the deed had provided for a conveyance of "'93.76 acres, more or less,'" the district court held that the sale had been in gross. See Turner, 232 Mont. at 148-51, 757 P.2d at 336-38. Therefore, the district court denied rescission to the purchasers. In affirming, this Court concluded:

Although we do not hold that the use of the language "more or less" alone creates a "sale in gross," we do hold that it is sufficient, combined with the observation of the property by the [purchasers], the sale price as a negotiated lump sum, and the lack of a statement of price per acre, to create a "sale in gross."

Turner, 232 Mont. at 151, 757 P.2d at 338.

21. ¶ According to Cedar Lane Ranch, the requirements for a sale in gross have been met: although it is impossible to determine from the record whether either McGowan or Carl Nelson personally observed the properties prior to the 1902 or 1916 conveyances, both Tinklepaugh deeds use words of estimation to describe the size of the property conveyed, contain a lump sum purchase price, and exclude any reference to a price per acre.

22. ¶ Carl Nelson Ranch argues, however, that under a plain language construction of the 1902 and 1916 deeds, Tinklepaugh clearly conveyed only seven acres to the Cedar Lane Ranch and the remaining thirty-three acres of the NE¼NE¼ of Section 26 to the Carl Nelson Ranch. In making this claim, Carl Nelson Ranch suggests that the plain meaning of "about" is the same as "approximately," which is defined in part as "nearly exact, accurate, complete or perfect." Webster's II New College Dictionary 3, 56 (2d ed. 1995).

23. ¶ We determine that the plain meaning of the words "about" and "approximately"

utilized respectively in the 1902 and 1916 deeds is the same as the more commonly used phrase "more or less." As this Court explained in Turner:

"The use of the words 'more or less' excludes the assumption of an exact number of acres and makes it clear that the precise dimensions of the property are not of the essence of the contract, the parties either not knowing themselves the exact number of acres in the land, or purposely not intending to state it."

Turner, 232 Mont. at 151, 757 P.2d at 338 (quoting 1 A.L.R.2d at 47-48). Furthermore, courts have construed similar words and phrases with like meaning: "The same interpretation that is given to the term 'more or less' has also been given to other terms of similar connotation, such as 'about,' 'by estimation,' 'approximately,' 'supposed to contain,' 'in the aggregate,' and 'nearly.' " C.T. Drechsler, Annotation, Relief by Way of Rescission or Adjustment of Purchase Price for Mutual Mistake as to Quantity of Land, Where the Sale is in Gross, 1 A.L. R.2d § 18, at 49-50 (1948) (footnotes omitted); accord 77 Am. Jur. 2d Vendor and Purchaser § 110, at 201 (1997).

24. ¶ An unambiguous deed must, to the extent possible, be interpreted according to its language as written. Ferriter v. Bartmess (1997), 281 Mont. 100, 103, 931 P.2d 709, 711 (citing §§ 70-1-513 and 28-3-401, MCA). This Court will "neither put words into a deed which are not there, nor put a construction on words directly contrary to their obvious meaning." McReynolds v. McReynolds (1966), 147 Mont. 476, 480, 414 P.2d 531, 533.

25. ¶ We hold that the plain meaning of the words "about" and "approximately" indicates that the parties did not intend to convey a precise number of acres by the 1902 and 1916 deeds. The specification of acreage quantities in the deeds, being qualified by words of estimation or approximation, renders the acreage quantities merely descriptive rather than material to the agreement. In other words, the stated acreage quantities are not of the essence of the contract, thus indicating a sale in gross. See Turner, 232 Mont. at 151, 757 P.2d at 338 (quoting 1 A.L.R.2d at 47-48); 77 Am. Jur. 2d Vendor and Purchaser § 110, at 200 (1997).

26. ¶ The original 1902 Tinklepaugh deed specifically described certain boundaries, the "foot of the hill" and the "county road," and only estimated the quantity of acres affected by the conveyance at "[a]bout 7." The record indicates that the consideration for the 1902 conveyance was another piece of land, with an estimated value of $100, which was apparently exchanged for the disputed property. There

being no indication in the record that this consideration was based upon the relative acreage of the two parcels exchanged, we conclude that the 1902 transfer was for a lump sum which, in conjunction with the use of "about" as a term of acreage estimation in the deed, created a sale in gross. We further conclude that the 1916 deed's specific reference to the same boundaries as the 1902 deed combined with a lump sum purchase price of $10,000 and the use of words of estimation (excluding "approximately seven" acres west of the highway from the total conveyance of "Two Hundred Acres, more or less") also created a bulk real estate transaction.

27. ¶ Having held that the intent of the 1902 and 1916 deeds, when read together, was to transfer Tinklepaugh's ownership in the NE¼NE¼ of Section 26 in gross, it is clear that the parties assumed the risk that the actual acreage transferred would vary from that stated in the deeds. The general rule is that:

"[O]n a sale of land by its legal description, or other specific description by which its boundaries are made certain, for a sum in gross, the boundaries will control in case of a discrepancy as to quantity, and . . . such a sale in gross affords no remedy to the grantor or the grantee for an excess or deficiency unless such excess is so great as to raise a presumption of fraud." [Emphasis added.]

Parcel, 214 Mont. at 228, 697 P.2d at 94 (quoting Carrel v. Lux (Ariz. 1966), 420 P.2d 564, 572). We hold that the description of the disputed property in the 1902 deed as "being west of the foot of the hill, where county road now runs," and in the 1916 deed as "lying on the west side of the public highway" controls over any discrepancy in acreage quantities stated in the two deeds.

28. ¶ As mentioned earlier, the disputed property lies to the west of Montana Highway 1, and is bordered on the three other sides by section lines. The record makes it clear that what is now Montana Highway 1 has long served as a "common boundary" between the two ranches dividing their respective holdings in the NE¼NE¼ of Section 26, with the Cedar Lane Ranch fencing the land to the west of the highway and the Carl Nelson Ranch fencing the land to the east. Carl Nelson Ranch also claims that it has a valid deed to the disputed property by virtue of the 1964 conveyance, which, in conjunction with the omission of the description of the disputed property from Cedar Lane Ranch's chain of title beginning in 1950, shows that Cedar Lane Ranch does not have a valid deed to the disputed property. However, we agree with the District Court that Carl Nelson Ranch cannot "claim the disputed parcel under color of title because their deed of 1964 excludes the area in

dispute" lying west of Montana Highway 1. Indeed, the 1964 deed does not purport to convey any land west of the highway, nor does it identify the Carl Nelson Ranch as the owner of the disputed property. This Court notes that Carl Nelson Ranch does not offer any suggestion, based on the relevant conveyances, as to how to identify which six acres west of the highway in the NE¼NE¼ of Section 26 it lays claim to without either inserting what was omitted or omitting what was inserted in the deeds. Section 1-4-101, MCA.

29. ¶ The District Court properly found that the acreage discrepancies in the relevant conveyances did not raise a genuine issue of material fact precluding summary judgment, since the grantor's consistent description of the property boundaries controls over the inconsistent acreage estimates in the conveyances. See Parcel, 214 Mont. at 228, 697 P.2d at 94. This Court need not reach the second issue on appeal.

30. ¶ Affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

Chief Justice J. A. Turnage did not participate.


Justice Terry N. Trieweiler dissenting.

31. ¶ I dissent from the majority's conclusion that the property at issue in this case was transferred in gross and that the actual acreage conveyed was immaterial.

32. ¶ In *Parcel v. Myers* (1984), 214 Mont. 225, 697 P.2d 92, we approved the following distinction between sale by the acre and sale in gross:

The legal authority is unequivocal on this subject. 77 Am.Jur.2d, Vendor and

Purchaser, § 90 provides:

"A contract of sale by the acre is one wherein a specified quantity is material. Under such a contract the purchaser does not take the risk of any deficiency and the vendor does not take the risk of any excess. *The contract of sale by the tract or in gross is one wherein boundaries are specified, but quantity is not specified.* Or if specified, the existence of the exact quantity specified is not material; each party takes the risk of the actual quantity varying to some extent from what he expects it to be."

We adopt the rationale of the Arizona Supreme Court which, citing the above legal authority, held:

. . . .

"Therein, the rule was stated that on a sale of land by its legal description or other specific description by which its boundaries are made certain, for a sum in gross, the boundaries will control in case of a discrepancy as to quantity, and that such a sale in gross affords no remedy to the grantor or the grantee for an excess or deficiency unless such excess is so great as to raise the presumption of fraud." *Carrell v. Lux* (1966), 101 Ariz. 430, 420 P.2d 564, 572.

*Parcel,* 214 Mont. at 228, 697 P.2d at 94 (emphasis added).

33. ¶ The majority's conclusion that the sale at issue was a sale in gross is based on its conclusion that: "The original 1902 Tinklepaugh deed specifically described certain boundaries." However, I disagree. The original 1902 grant conveyed "about (7) seven acres of land *off of the west side* of the Northeast quarter (NE¼) of the Northeast quarter (NE¼) of Section Twenty-six (26), Township Ten (10) North, Range Thirteen (13) West. Said piece of land being west of the foot of the hill, where the county road now runs." In other words, the only reference to a boundary for the transferred land is that it lay on the west side of the county road. There was no description of the north, south, or east boundary of the portion conveyed. However, there was reference to the approximate size of the property transferred. It was described as "about seven (7) acres." Although words of approximation such as "about" leave some room for variation from the number of acres specified, they don't permit a construction which would nearly double the number of acres specified.

34. ¶ Because the contract of sale in 1902 does not specify the boundaries of the

property transferred and because the specific quantity was specified, the transfer in this case could not be in gross as we defend that term in *Parcel*. For these reasons, I would reverse the District Court's conclusion that the actual acreage of the conveyance was immaterial and dissent from that portion of the majority's opinion which holds otherwise.

35. ¶ I would also reverse that portion of the District Court's opinion which concluded by summary judgment that Cedar Lane Ranch holds title to the disputed property by adverse possession. There was affidavit evidence that Carl Nelson Ranch has paid taxes on the disputed property since 1964 and that Cedar Lane Ranch has never paid taxes on the disputed property. Section 70-19-411, MCA requires payment of taxes before property can be acquired by adverse possession. At best, there was a factual issue whether that requirement was satisfied. For these reasons I would reverse the judgment of the District Court and remand to the District Court for further proceedings to resolve those factual questions related to the issue of adverse possession.

/S/ TERRY N. TRIEWEILER