FILED

November 7 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 07-0166

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 367

LIBBY PLACER MINING CO.,

      Plaintiff and Appellant,

v.

NORANDA MINERALS CORP., a Delaware corporation;
and NORMIN CORP., a Delaware corporation,

      Defendants and Appellees.

FILED

NOV 0 7 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DV 06-31
Honorable Michael C. Prezeau, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Amy N. Guth, Attorney at Law, Libby, Montana

    For Appellees:

        J. Richard Orizotti, John P. Davis; Poore, Roth & Robinson,
Butte, Montana

Submitted on Briefs:  March 12, 2008

Decided:  November 7, 2008

Filed:

_____
               Clerk

District Court Judge Jeffrey H. Langton delivered the Opinion of the Court.

¶1 Appellant Libby Placer Mining Company ("Libby Placer") appeals from an order of the Nineteenth Judicial District Court, Lincoln County, denying Libby Placer's motion for summary judgment on its complaint seeking declaratory judgment that Libby Placer has reacquired a condemned mineral interest by operation of law; and granting a motion for summary judgment filed by Noranda Minerals Corporation ("Noranda") to quiet title to the property at issue in favor of Noranda. We affirm.

¶2 We restate the issue on appeal as follows:

¶3 Did the District Court err (1) in determining that Libby Placer has no reversionary interest in a previously condemned mineral interest, and (2) in quieting title to Noranda?

## FACTUAL BACKGROUND

¶4 On June 29, 1933, several individuals acquired a United States Patent by Warranty Deed issued by the Department of Interior, General Land Office, for the mining claims subject to this litigation. These claims were designated as U.S. Mineral Survey No. 10377 and were commonly known as the Comet, Hogum, and Deadwood placer mining claims.

¶5 In 1951, Paul K. Hennessy and Margaret H. Craik, successors-in-interest to the patented mining claim, obtained a decree quieting title to the property designated within U.S. Mineral Survey No. 10377 and declaring them to be "the owners against all the world."

2

¶6 Hennessy and Craik thereafter transferred the real property designated within U.S. Mineral Survey No. 10377 to J. Heils Lumber Company "and to its successors heirs and assigns forever," excepting and reserving from the grant "all minerals and ores of whatsoever nature lying within said lands, including coal, iron, gas and oil." The conveyance severed the mineral interest of the real property from the surface interest.

¶7 Subsequently, Libby Placer acquired 75% of the mineral interest in the property through deeds from various heirs, devisees, and assigns of Hennessy and Craik. Noranda acquired 25% of the mineral interest through deed from an heir of Craik.

¶8 On June 19, 1989, Champion International Corporation (a successor-in-interest to J. Heils Lumber Company) and Noranda executed an agreement by which Noranda was granted an option to purchase the real property at issue, less the mineral interest which previously had been severed from the surface estate.

¶9 On September 13, 1989, Noranda filed a condemnation action against Libby Placer and other interested persons seeking acquisition by condemnation of all interests, other than those Noranda presently owned or in which it held an option to acquire, in "a parcel of land comprising portions of the DEADWOOD PLACER and HOGUM PLACER of Mineral Survey No. 10377," consisting of approximately 234 acres, pursuant to § 70-30-102(5), MCA (1989), for mine tailings impoundments and related facilities.

¶10 In its complaint, Noranda alleged it had the right through eminent domain to acquire the interests in fee simple; stated it sought to take and condemn the outstanding interests in fee simple; and in its prayer, sought an "order and judgment condemning said real property, vesting in Noranda fee simple absolute title to said property."

3

¶11 Libby Placer was the only named defendant to defend against Noranda's condemnation claim. All other defendants either disclaimed any interest or failed to appear, answer, or otherwise defend and were defaulted.

¶12 On March 22, 1991, pursuant to a stipulation between Libby Placer and Noranda, the District Court entered a Final Judgment of Condemnation "for all relief sought in Noranda's complaint, including condemnation of all of defendants' right, title and interest in the property particularly described as . . . [a] parcel of land comprising portions of the DEADWOOD PLACER and HOGUM PLACER of Mineral Survey No. 10377." The amount of $20,000 was assessed against Noranda in favor of Libby Placer as "full just compensation."

¶13 On September 1, 1993, Champion International Corporation transferred "[a]ll that land enclosed within the boundaries of U.S. Mineral Survey No. 10377, including the Comet, Hogum and Deadwood Placer Mining Claims," excepting the minerals and ores, to Noranda by warranty deed, subject to a reservation of the timber on the property. This transfer vested Noranda with all surface and mineral rights except for the timber reservation.

¶14 On April 29, 1996, Libby Placer filed a "Notice of Reversionary Interest" with the Lincoln County Clerk and Recorder concerning a "parcel of land comprising a portion of the DEADWOOD PLACER and the HOGUM PLACER of Mineral Survey No. 10377." In its filing, Libby Placer gave notice that whereas Noranda's title to the mineral interest awarded pursuant to the March 22, 1991 Final Judgment of Condemnation was "an interest other than a fee simple interest," Libby Placer was registering its intent to

4

exercise its reversionary rights (1) in the event Noranda abandons the condemned interest, or (2) in the event that the purpose for which the property interests were acquired by right of eminent domain is terminated, in accordance with §§ 70-30-321(3) and -322(3), MCA.

¶15 On August 19, 2002, Noranda issued a news release in Toronto, Ontario, Canada, announcing that it had decided to abandon the Montanore[1] copper-silver project in Montana and had accordingly notified federal and state regulatory agencies. According to the news release, the Montanore project was a proposed underground copper-silver mine located near Libby that was initiated in 1989 and suspended in 1991 due to the economic unfeasibility of its development as a result of depressed metal prices expected to continue into the foreseeable future.

## PROCEDURAL BACKGROUND

¶16 On February 28, 2006, Libby Placer filed suit against Noranda seeking a declaratory judgment that the fractional mineral interest that Noranda acquired from it in 1991 through eminent domain had reverted to Libby Placer by operation of § 70-30-321(3), MCA, as a result of Noranda's abandonment of the mining operations.

¶17 Noranda answered with a general denial and counterclaimed to quiet title to both the surface and the mineral interests of the real property as against Libby Placer and all persons claiming under Libby Placer. Additionally, Noranda denied it has abandoned the mining project or that the issue of abandonment was material to the issue before the court.

---

[1] Noranda is now known as Montanore Minerals Corporation.

¶18 The parties filed cross-motions for summary judgment.

¶19 Libby Placer argued that one cannot own a fee simple interest in a mineral interest separated from the surface estate, and, alternatively, if a mineral interest can be legally classified as a fee simple estate, a fractional interest in the minerals cannot. Libby Placer therefore asserted the District Court could not have condemned a fee simple interest in 1991 without condemning the surface interest, which the court did not do. Libby Placer pointed out, in fact, that Champion International Corporation, the owner of the surface estate at the time of condemnation, was not a party to the condemnation litigation.

¶20 Libby Placer further argued that the 1991 Final Judgment of Condemnation failed to award a fee simple interest to Noranda because under the plain language of the judgment, Noranda was granted "all relief sought in Noranda's complaint, including condemnation of all of defendant's right, title and interest in the [property]," without specifying that such relief constituted a fee simple interest.

¶21 Finally, Libby Placer argued that if its fractional mineral interest was not contemplated by § 70-30-321(3), MCA, then no condemned mineral rights would ever revert to the original owner and subsection (3) would have been enacted without purpose.[2]

---

[2] Sponsors of Senate Bill No. 170, enacted in 1983 to amend §§ 70-30-321 and -322, MCA, by adding the subsection (3) language to each section, appear to have been primarily motivated to address disposition of condemned right of way easements abandoned by railroads, utilities and public bodies. Sen. State Admin., *An Act Eliminating the Right of First Refusal of the Former Owner of a Real Property Interest Acquired for a Public Use and Later Abandoned*: Hrg. on Sen. 170, 1983 Reg. Sess. (Jan. 25, 1983) (Ex. 2: *Brief in Support of Repealer SB 170*). The Legislative history contains no reference to abandoned mining properties.

¶22 Noranda countered that in its eminent domain proceeding, it acquired title to Libby Placer's mineral interests in fee simple, and therefore §§ 70-30-321(3) and -322(3), MCA, which provide for reversionary interests under limited circumstances for interests other than fee simple, do not apply. Noranda further noted that Libby Placer entered into a joint motion for entry of full and final judgment in Noranda's favor and against Libby Placer for the payment to Libby Placer of $20,000 and, thus, argued that Libby Placer's claim that its condemned interest was not a fee simple interest is barred by the doctrine of collateral estoppel.

¶23 After a hearing on the issue of whether Noranda had acquired a fee simple interest in Libby Placer's mineral interest, which would thereby render moot the issue of abandonment on which Libby Placer's claim rests, the District Court ruled in favor of Noranda. The District Court initially determined that in exchange for payment of $20,000 to Libby Placer, Noranda received everything Libby Placer had owned. The District Court further determined:

> What is important in the context of this motion is not what interest Libby Placer conveyed to Noranda, but what interest Noranda acquired in the property from whatever source. Even if Libby Placer's 75% ownership of the mineral estate were not legally classified as a fee simple interest (and Noranda makes a convincing argument that it is properly classified as such), when that 75% interest was consolidated with Noranda's 25% interest, and the mineral estate was later consolidated with Champion International's 100% interest in the surface estate, by 1993, there is no part of the fee that Noranda had not acquired and did not own.

¶24 Concluding that "[i]t is not necessary for the Court to determine whether there can be separate fee simple ownerships of the mineral estate and the surface estate, as by 1993, Noranda owned 100% of both estates[,]" the District Court held that because Noranda

owned 100% of both estates in fee simple prior to Libby Placer's filing of its Notice of Reversionary Interest, Libby Placer had no reversionary interest in the property regardless of whether Noranda abandoned the mining project.

## STANDARDS OF REVIEW

¶25 We review a district court's grant of summary judgment *de novo*, applying the standard from M. R. Civ. P. 56. *Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 11, 331 Mont. 281, ¶ 11, 130 P.3d 1267, ¶ 11 (citation omitted). The moving party must establish the absence of any genuine issues of material fact and entitlement to judgment as a matter of law.

¶26 We review a district court's conclusions of law to determine whether they are correct. *Baltrusch*, ¶ 11. We will affirm a correct result, even if the district court reached the correct result for the wrong reason. *Montana Earth Resources Ltd. Partnership v. North Blaine Estates, Inc.*, 1998 MT 254, ¶ 29, 291 Mont. 216, ¶ 29, 967 P.2d 376, ¶ 29 (citing *Bowen v. McDonald*, 276 Mont. 193, 200, 915 P.2d 201, 206 (1996)).

## DISCUSSION

¶27 Did the District Court err (1) in determining that Libby Placer has no reversionary right to a previously condemned mineral interest taken by Noranda, and (2) in quieting title to Noranda?

### I. WHICH INTEREST IS CONTEMPLATED UNDER § 70-30-321(3), MCA?

¶28 Libby Placer argues the District Court erred in construing the language of § 70-30-321(3), MCA, to address the interest Noranda had acquired as of 1993 rather than Libby Placer's interest at the time of condemnation in 1991. Libby Placer asserts the plain

language of the statute refers to the condemnee's interest, not the after-acquired interest of the condemnor.

¶29 The statutory procedure governing eminent domain is codified at Title 70, chapter 30. Section 70-30-321(3), MCA, provides:

> When an interest, *other than a fee simple interest*, in property that has been acquired for a public purpose by right of eminent domain, or otherwise, is abandoned or when the purpose for which it was acquired is terminated, the property reverts to the original owner or the original owner's successor in interest.

(Emphasis added.)

¶30 In construing a statute, a court "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA.

¶31 The "interest in property" contemplated in § 70-30-321(3), MCA, that reverts to the original owner or the original owner's successor in interest is the interest in property *"that has been acquired by right of eminent domain."* The interest that has been acquired by right of eminent domain is the interest that was held by the condemnee prior to condemnation. The interest relevant to this dispute is the fractional mineral interest Libby Placer held that Noranda acquired by condemnation on March 22, 1991, by entry of the Final Judgment of Condemnation.

¶32 The District Court, erroneously focusing on the interest Noranda held as of 1993, saw no need to determine whether one may own a fee simple interest in a fractional mineral interest. Because the correct focus is on the interest Libby Placer held prior to condemnation, the legal nature of that interest must be determined. If Libby Placer's

9

interest was other than a fee simple interest, then § 70-30-321(3), MCA, governs and the interest reverts to Libby Placer upon Noranda's abandonment. If Noranda acquired a fee simple interest from Libby Placer in 1991, then there is no possible reversion, regardless of whether the mining venture was abandoned or not.

## II. DID LIBBY PLACER HAVE A FEE SIMPLE ESTATE IN ITS FRACTIONAL MINERAL INTEREST?

¶33 Libby Placer argues that its fractional mineral interest in the property was not a fee simple interest and, therefore, Noranda could not have acquired a fee simple interest from it as a result of the condemnation proceeding. Because Noranda acquired an interest other than a fee simple interest, Libby Placer asserts its condemned interest reverted to it upon Noranda's abandonment of the project by operation of law.

¶34 Noranda argues that in its condemnation proceeding, it acquired Libby Placer's 75% mineral interest in fee simple, which, together with Noranda's 25% mineral interest in fee simple, gave Noranda 100% of the mineral interest in fee simple as a matter of law. Because the reversion provision codified at § 70-30-321(3), MCA, applies to interests other than fee simple interests, Noranda argues that the District Court properly granted Noranda's motions for summary judgment on Libby Placer's claim for a declaratory judgment and on Noranda's counterclaim for quiet title, and properly denied Libby Placer's cross-motion for summary judgment on its claim.

### A. Characteristics of Real Property Interests

¶35 Property interests in land have at least four major characteristics: (1) duration, (2) right to possession, (3) degree of beneficial enjoyment conferred on the owner, and (4)

10

type of ownership. Richard R. Powell, *Powell on Real Property* vol. 1, § 11.01 (Michael Allan Wolf ed., Lexis 2007). The *duration* of a real property interest is denoted by "estate" and (1) may be infinite or perpetual, as in fee simple; (2) may last for a specified period, such as life or a term of years; or (3) may end at any time, as in sufferance. Powell, *Powell on Real Property* vol. 1 at § 11.01. A *right to possession* may take the form of a present right to possession, a future right to possession, or no right to possession at all, such as with an easement or franchise. Powell, *Powell on Real Property* vol. 1 at § 11.01. The *benefit* conferred by an interest to its owner may be an unadulterated benefit, or only a partial or conditional benefit, as in a security interest. Powell, *Powell on Real Property* vol. 1 at § 11.01. Finally, *ownership* of a real property interest may be by a single person or entity, or by two or more persons or entities in concurrent ownership. Powell, *Powell on Real Property* vol. 1, § 11.01.

**B. Fee Simple Estate**

¶36 An "estate" is "an interest in land which (a) is or may become possessory; and (b) is ownership measured in terms of duration." *Restatement (First) of Property*, § 9. Freehold estates, which under the common law include fee simple and life estates, are estates of indeterminate duration and are generally characterized by ownership. 28 Am. Jur. 2d *Estates* §§ 11, 146 (2000). Nonfreehold estates, which include term, periodic tenancy, tenancy at will, and tenancy at sufferance, are estates of less than freehold and are generally characterized by possession through lease. 28 Am. Jur. 2d *Estates* §§ 11, 146. Permissible freehold and nonfreehold estates in Montana real property are codified at § 70-15-202, MCA.

¶37 The words "fee simple" indicate "an absolute title or estate in lands wholly unqualified by any reversion, reservation, condition or limitation, or possibility of any such thing present or future, or precedent or subsequent." *Thompson on Real Property* vol. 2, § 17.02, 612 (David A. Thomas ed., Matthew Bender 2000). The freehold estate of fee simple absolute is the highest form of ownership that can be held in real property. *Thompson on Real Property* vol. 2, § 17.01 at 599. It is "the estate that never ends but continues into infinity." *Thompson on Real Property* vol. 2, § 17.01 at 599. "[I]t has no restrictions on its use or enjoyment except those imposed by public policy for the common good." *Thompson on Real Property* vol. 2, § 17.01 at 599. "[A] fee-simple title is 'a freehold estate of inheritance absolute and unqualified. It stands at the head of estates as highest in dignity and the most ample in extent; since every other kind of estate is derivable thereout, and mergeable therein.'" *Gantt v. Harper*, 82 Mont. 393, 404, 267 P. 296, 298 (1928) (citation omitted).

### C. Division of Real Property Interests

¶38 Real property interests are generally subject to division. Robert G. Natelson, *Modern Law of Deeds to Real Property*, § 2.3.1, 16-17 (Little, Brown and Company 1992). An interest may be divided temporally into present and future estates. Natelson, hereinafter *Modern Law of Deeds*, § 2.3.1 at 16. An interest may be divided vertically, by splitting land into smaller tracts, each conveyed to a different grantee; or horizontally, by dividing the air space into blocks as contemplated in condominiums or severing surface interests from the mineral interests below. Natelson, *Modern Law of Deeds*, § 2.3.1 at 16. Finally, an interest may be divided as to ownership, i.e., an interest may be

held by one person or entity, or by two or more as tenants in common or joint tenants. Natelson, *Modern Law of Deeds*, § 2.3.1 at 16-17, § 2.7 at 30-31; Powell, *Powell on Real Property* vol. 1 at § 11.01.

¶39 A fee simple estate may be had in minerals beneath the surface of the ground separate and apart from the surface. *Thompson on Real Property* vol. 2, § 17.02 at 613.

> Since minerals are severable portions of the land, they are proper subjects of an exception or reservation in grants or conveyances. A grantee of the land other than the minerals or with the minerals reserved or excepted from the grant gets title to all the surface, and *the grantor has a fee simple in the minerals retained.*

53A Am. Jur. 2d *Mines and Minerals* § 181 (2006). *See also* 58 C.J.S. *Mines and Minerals* § 166 (1998). (Emphasis added.)

> After the mineral is conveyed apart from the land, or vice versa, two separate estates exist, each of which is distinct from the other . . . . The surface and the mineral rights are held by separate and distinct titles in severalty, and each is separate from, and independent of, the other.

> The owner of each estate has the right to exercise with respect thereto all the incidents of ownership in the same manner as over other property he or she may possess, subject only to such rights or servitudes as exist in favor of the other owner. The owners are free separately to convey their interests. The estate in the minerals may be conveyed by deed in the same manner as other real estate is conveyed; may be devised by will, may pass by inheritance, and, unless the grant otherwise provides, the mineral estate may be leased, and . . . is subject to taxation.

58 C.J.S. *Mines and Minerals* § 164.

> When, by appropriate conveyance, the mineral estate in lands is severed from the surface, separate and distinct estates are thereby created which are held by separate and distinct titles, and *each is a freehold estate of inheritance subject to the laws of descent, devise, and conveyance* . . . .

> A grantee of the minerals underlying the land becomes the owner of them; his or her interest is not a mere mining privilege. The minerals thus

13

severed become a separate corporeal hereditament. Their ownership is attended with all the attributes and incidents peculiar to ownership of land, and they may be embraced in the terms "land" or "real property" in a subsequent conveyance. Mineral interests are treated as real property interests, and are subject to the rules related to real property. *The duration of a mineral interest is like that of common law estates, namely, in fee simple, in fee simple determinable, for life, or for a fixed term of years.* "Mineral interests" are interests in real estate which are vested immediately when created and which remain vested for whatever term is stipulated.

53A Am. Jur. 2d *Mines and Minerals* § 159. (Emphasis added.)

¶40　"Where a deed reserves a fraction of the minerals conveyed, the deed effectively reserves a fee-simple fraction of the mineral estate under the entire tract." 53A Am. Jur. 2d *Mines and Minerals* § 178.

### D. Montana Law Regarding Divisions of Real Property Interests

¶41　A property owner has the right "to carve out of his property as many estates or interests (perpendicular or horizontal, perpetual or limited) as it may be able to sustain." *R. M. Cobban Realty Co. v. Donlan*, 51 Mont. 58, 66, 149 P. 484, 487 (1915) (citations omitted).

¶42　We have long recognized that title to mineral interests in land may be segregated in whole or in part from the rest of the fee simple title. *See Carbon County v. Union Reserve Coal Co.*, 271 Mont. 459, 473, 898 P.2d 680, 688 (1995); *Wyrick v. Hoefle*, 136 Mont. 172, 175, 346 P.2d 563, 565 (1959); *Stokes v. Tutvet*, 134 Mont. 250, 256, 328 P.2d 1096, 1099 (1958); *Voyta v. Clonts*, 134 Mont. 156, 162, 328 P.2d 655, 659 (1958); and *Rist v. Toole County*, 117 Mont. 426, 432, 159 P.2d 340, 342 (1945) (citing *Krutzfeld v. Stevenson*, 86 Mont. 463, 284 P. 553 (1930); *Broderick v. Stevenson Consolidated Oil Co.*, 88 Mont. 34, 290 P. 244 (1930); *Hodgkiss v. Northland Petroleum Consolidated*,

14

104 Mont. 328, 57 P.2d 811 (1937)). A division of the mineral interest from the surface interest is a horizontal division.

¶43 We have also recognized that mineral interests, like surface interests, may be divided vertically into fractional interests. The *Rist* Court cited *Broderick, Krutzfeld,* and *Marias River Syndicate v. Big West Oil Co.*, 98 Mont. 254, 38 P.2d 599 (1934), as examples in which mineral deeds expressly conveyed fractional interests in minerals. *Rist*, 117 Mont. at 437-38, 159 P.2d at 345. "The extent of the interest conveyed, reserved, or excepted by a grant, reservation, or exception of a fractional interest in minerals or mineral rights depends on the particular terms of the instrument." 58 C.J.S. *Mines and Minerals* § 178.

### E. Analysis

¶44 The deed chain for the real property at issue is part of the record. The language of the 1951 deed whereby Hennessy and Craik transferred the real property designated within U.S. Mineral Survey No. 10377 to J. Heils Lumber Company, excepting and reserving the mineral interest, contains no limitations or restrictions on the reserved mineral interest. A fee simple title is presumed to be intended by every grant of real property from which it does not appear that a lesser estate was intended. *R. M. Cobban*, 51 Mont. at 66, 149 P. at 486-87.

¶45 The mineral reservation was subsequently acquired by various heirs, devisees, and assigns of Hennessy and Craik, many of whom quit claimed their fractional interests to Libby Placer. Ultimately, Libby Placer acquired 75% of the mineral interest, and Noranda acquired the remaining 25%.

15

¶46 The fact that Libby Placer's interest was a fractional interest has no bearing on the quality of its estate. Prior to condemnation, Libby Placer had complete ownership and control of its 75% fractional mineral interest. Libby Placer had the freedom to own it forever, develop it, divide it, lease it, or sell it. Its interest was independent of any other interest. We conclude Libby Placer held its 75% fractional mineral interest in fee simple.

¶47 Contrary to Libby Placer's argument that fee simple refers to a particular quantity (i.e., the whole) of real property, fee simple describes the infinite or perpetual duration of the ownership of the interest, be it an interest in the whole, the surface, a fraction of the surface, the minerals, or a fraction of the minerals. Just as children who inherit or are devised a common parent's home would each receive concurrent fractional interests in fee simple, Libby Placer and Noranda each held concurrent fractional interests in the mineral estate in fee simple as tenants in common, prior to condemnation. *Marias River*, 98 Mont. at 265, 38 P.2d at 602. Libby Placer's and Noranda's interests were each absolute and unqualified, the highest form of ownership that can be held in real property.

¶48 In the Final Judgment of Condemnation, Noranda was granted "all relief sought in Noranda's complaint, including condemnation of all of [Libby Placer's] right, title and interest in the [property]." Because Noranda acquired all of Libby Placer's fee simple right, title and interest in the condemnation action, Libby Placer retained no reversionary interest either under the terms of the condemnation decree or by operation of law.

¶49 Section 70-30-321(3), MCA, which provides that an interest in property acquired for a public purpose through condemnation will revert to the original owner upon abandonment or when the purpose for which it was acquired is terminated, specifically

16

excludes fee simple interests. Libby Placer's fee simple interest is excluded by the plain language of the statute.

¶50 We conclude that Libby Placer's condemned 75% mineral interest was a fee simple interest and, accordingly, has not reverted and can never revert to Libby Placer, pursuant to § 70-30-321(3), MCA. While the District Court erroneously concluded that what was relevant under § 70-30-321(3), MCA, was the interest Noranda acquired in the property from whatever source, rather than Libby Placer's interest condemned by Noranda, we will affirm a court's decision even if it reaches the right result for the wrong reason. *Montana Earth Resources*, ¶ 29 (citation omitted).

¶51 Affirmed.

_____
Hon. Jeffrey H. Langton, District Judge,
sitting for Justice Brian Morris

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

17