FILED

10/11/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0631

DA 21-0631

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 196

ROBERT DELLIT, FRANCES DELLIT, RAYMOND F.
MESSER, MATRIN G. MESSER, and CHARLES J. MESSER,

        Plaintiffs and Appellants,

   v.

LEONARD SCHLEDER, CULVER PROPERTIES LLP,
CHARLES D. BUTTS, KIRBY MINERALS, AN
OKLAHOMA GENERAL PARTNERSHIP, C/O MINERAL
ACQUISITION PARTNERS, INC., GENERAL
PARTNER, TUCKER GARNER O&G LLC, MARY ANN
MOSS, CHERRON MUNSON, GAYLE ROSKI, MARY ANNE
GARNER FRISONE REVOCABLE TRUST U/A DATED
SEPTEMBER 17, 1993, JAMES E. MUNSON AND CHERRON
G. MUNSON, TRUSTEES OF THE JAMES E. & CHERRON G.
MUNSON REVOCABLE TRUST U.A. DATED AUGUST 24,
1993, GAYLE GARNER ROSKI, TRUSTEE OF THE GAYLE
GARNER ROSKI REVOCABLE TRUST U/A DATED
NOVEMBER 16, 1993, TRIO PETROLEUM CORP., THE
HOME-STAKE OIL & GAS COMPANY, THE HOME-STAKE
ROYALTY CORPORATION, and all other persons, unknown,
claiming or who might claim any right, title, estate, or interest in,
or lien or encumbrance upon, the real property described in the
Complaint adverse to plaintiffs' ownership, or any cloud upon
Plaintiffs' title, whether the claim or potential claim is present or
contingent, inchoate or accrued,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
                  In and For the County of Rosebud, Cause No. DV 20-01
                  Honorable Nickolas C. Murnion, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Patrick G.N. Beddow, Morgan E. Tuss, Patten, Peterman, Bekkedahl &
                Green, PLLC, Billings, Montana

For Appellee Culver Properties, LLP:

Emily Jones, Jones Law Firm, PLLC, Billings, Montana

For Appellee Leonard Schleder:

Brian D. Lee, David J. Lee, Lee Law Office PC, Shelby, Montana

For Appellees Tucker Garner O&G LLC, Mary Ann Moss, Cherron Munson, Gayle Roski, Mary Anne Garner Frisone Revocable Trust, James E. & Cherron G. Munson Revocable Trust, and Gayle Garner Roski:

Loren J. O'Toole II, O'Toole Law Firm, Plentywood, Montana

Submitted on Briefs: June 29, 2022

Decided: October 11, 2022

Filed:

_____
Clerk

2

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Appellants Robert Dellit, Frances Dellit, Raymond F. Messer, Martin G. Messer, and Charles J. Messer appeal from the November 12, 2021 Order of the Sixteenth Judicial District Court, Rosebud County, granting Leonard Schleder (Leonard) summary judgment and declaring Leonard the owner of the contested mineral rights. We affirm.

¶2 We restate the issues on appeal as follows:

1. *Whether the District Court correctly interpreted the deed language to reserve to Leonard all his mineral interests in the property?*

2. *Whether the District Court properly considered the chain of title in its interpretation of the deed language?*

3. *Whether the District Court correctly determined that estoppel by deed did not apply?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 Prior to March 10, 1950, Leonard was the record owner of an interest in the surface and mineral interests in the following described property located in Rosebud County, Montana (Property):

Township 9 North, Range 33 East, MPM:
Section 4: Lots 1, 2, 3, 4, S½N½, (N½), S½
Section 8: S½N½, S½
Section 9: All

¶4 Leonard held surface and mineral interests in the Property consisting of an undivided 1/2 interest in the minerals and surface in the N½ (also described as Lots 1-4, S½N½) of Section 4 (Tract 1); an undivided 2/3rds interest in the surface and mineral estate

3

in the S½ of Section 4 (Tract 2); an undivided 2/3rds interest in the surface and mineral estate in the S½N½ and S½ of Section 8 and all of Section 9 (Tract 3).

¶5     Leonard's interests in the Property derive from his parents, Raymond N. Schleder (Raymond) and Elizabeth Schleder (Elizabeth), who operated a ranch covering the Property.  Raymond was the sole owner of the Property's surface and mineral estate except for the N½ of Section 4, which he owned in equal shares and as tenants in common with Elizabeth.

¶6     As a result of probate proceedings following his death, Leonard's father's interests in the Property were devised to Leonard, Leonard's sister Irene Messer, and their mother Elizabeth in equal shares pursuant to the Decree Settling Final Account of Administrator and Final Distribution.  This resulted in ownership of the Property's mineral estate as follows:

| [Tract 1] | [Tracts 2 and 3] |
|---|---|
| Elizabeth Schleder = 66.666666% | Elizabeth Schleder = 33.333334% |
| Irene Messer = 16.666667% | Irene Messer = 33.333333% |
| Leonard = 16.666667% | Leonard = 33.333333% |

¶7     Leonard's mother subsequently conveyed an undivided 1/3rd interest in the Property to Leonard pursuant to a warranty deed.  As a result, ownership of the Property's mineral estate was held as follows:

| [Tract 1] | [Tracts 2 and 3] |
|---|---|
| Elizabeth Schleder = 33.333333% | Elizabeth Schleder = 0% |
| Irene Messer = 16.666667% | Irene Messer = 33.333333% |
| Leonard = 50.000000% | Leonard = 66.666667% |

4

There were two chains of title: one for the mineral estate and one for the surface estate. Leonard owned the same percentage interest in the surface estate by virtue of these conveyances as he did to the mineral estate.

¶8 By warranty deed executed and recorded on March 10, 1950, in Rosebud County (the "Warranty Deed"), Leonard conveyed and warranted to Irene Messer and her husband Phillip Messer (the "Grantees") as joint tenants with right of survivorship, all interest in the Property, subject to the following exception and reservation:

> Excepting and reserving unto the party of the first part, himself, his heirs, and assigns, an undivided **two thirds** of **all** oil, gas and minerals in, upon or under said lands together with the right of ingress and egress, to and from said lands for the purpose of drilling, exploring and in every way operating for such minerals and removing the same, excepting, however from this reservation, the N½NW and N½NE of Section 8, Township 9 North, Range 33 East MPM Rosebud County, Montana.  [(Emphasis added.)]

The Warranty Deed further provided that "(t)his conveyance is also subject to all easements and reservations in the chain of title."

¶9 The covenant of warranty in the Warranty Deed provided:

> And the said party of the first part and his heirs, does hereby covenant that he will forever warrant and defend all right, title and interest in and to the said premises, and the quiet and peaceable possession thereof, unto the said parties of the second part, as joint tenants with right of survivorship (and not as tenants in common) and to the heirs and assigns of the survivor of said named Joint Tenant, against all acts and deeds of the said party of the first part, and all and every person and persons whomsoever lawfully claiming or to claim the same.

¶10 Through mesne conveyances, Robert Dellit, Frances Dellit, Raymond F. Messer, Martin G. Messer, and Charles J. Messer (Appellants) are successors in interest to the Grantees.  Leonard filed a motion for summary judgment for a decree that he reserved all

5

his mineral interests in the Property under the Warranty Deed. Appellants filed a cross motion for summary judgment, contending that the Warranty Deed transferred to the Grantees an undivided 1/3rd mineral interest in the entire Property.

¶11 The District Court granted summary judgment to Leonard, determining that the unambiguous language of the Warranty Deed reserved to Leonard a 2/3rds interest in the surface and mineral estates in Tracts 2 and 3 and a 1/2 interest in the surface and mineral estates in Tract 1. When the Warranty Deed was executed, Leonard's sister, Irene Messer, owned a 1/3rd interest in the surface and mineral estates in Tracts 2 and 3 and a 1/6th interest in the surface and mineral estates in Tract 1. The District Court held that Leonard could not convey more of the surface and mineral interests than he owned at the time, and he retained his mineral interests through the reservation clause. Further, the District Court determined that estoppel by deed did not preclude consideration of the circumstances surrounding the Warranty Deed's execution, and that because Irene Messer owned the other 1/3rd of the surface and minerals in the Property, the Warranty Deed's reservation of 2/3rds of the minerals did not mislead her into believing she was receiving an additional 1/3rd of the minerals. Appellants appeal the District Court's summary judgment order.

**STANDARD OF REVIEW**

¶12 We review a district court's grant of summary judgment de novo, applying the criteria outlined in M. R. Civ. P. 56. *Broadwater Dev., LLC v. Nelson*, 2009 MT 317, ¶ 15, 352 Mont. 401, 219 P.3d 492 (citation omitted). We review a district court's conclusions

of law for correctness. *Libby Placer Mining Co. v. Noranda Minerals Corp.*, 2008 MT 367, ¶ 26, 346 Mont. 436, 197 P.3d 924.

## DISCUSSION

¶13 *1. Whether the District Court correctly interpreted the deed language to reserve to Leonard all his mineral interests in the property?*

¶14 The parties agree that the Warranty Deed is unambiguous but disagree on the percentage interest of the reserved mineral rights. Appellants contend that the Warranty Deed, which reserved 2/3rds of the mineral interests in the Property to Leonard, impliedly granted to Irene Messer and Phillip Messer, the Grantees, the outstanding 1/3rd of the mineral interests. Appellants contend that a warranty deed's grant takes precedence over a reservation, and that because the Warranty Deed plainly reserved 2/3rds of the mineral interests, the Deed cannot be read to convey any less than the implicit 1/3rd still subject to the grant. Appellants further contend that if Leonard had intended to reserve all his mineral interests, the Warranty Deed's reservation clause could have simply reserved *all* the mineral interests in the Property.

¶15 Leonard contends that the Warranty Deed plainly withheld from the grant 2/3rds of the entire mineral estate underlying the Property. Because Leonard owned 2/3rds of the mineral interests in Tracts 2 and 3, he argues he reserved all his mineral rights and did not convey any portion to Appellants. Although Leonard only owned 1/2 of the minerals in Tract 1, he argues that because his reservation of 2/3rds of all the mineral rights is sufficient to cover this amount, he reserved his entire 1/2 share under the Warranty Deed. Leonard further asserts that because the Warranty Deed's reservation clause must be interpreted in

7

favor of the grantor pursuant to § 70-1-516, MCA, the reservation of 2/3rds of the mineral estate takes precedence over any grant.

¶16 Deeds are governed by the rules of contract interpretation. Contracts are interpreted according to their plain meaning, and "must be interpreted in such a way as to give effect to the mutual intention of the parties as it existed at the time of contracting . . . ." *Murray v. BEJ Minerals, LLC*, 2020 MT 131, ¶ 20, 400 Mont. 135, 464 P.3d 80 (citations omitted). The "intention[s] of the parties to a deed [are] to be ascertained, if possible, from its language, not as it is presented in particular sentences or paragraphs, but according to its effect when viewed as an entirety." *Wyrick v. Hoefle*, 136 Mont. 172, 174, 346 P.2d 563, 565 (1959) (quoting *Musselshell Valley Farming & Livestock Co. v. Cooley*, 86 Mont. 276, 294, 283 P. 213, 218 (1929)). A contract's language "govern[s] its interpretation if the language is clear and explicit and does not involve an absurdity." Section 28-3-401, MCA.

¶17 "The extent of the interest conveyed, reserved, or excepted by a grant, reservation, or exception of a fractional interest in minerals or mineral rights depends on the particular terms of the instrument." *Libby Placer Mining Co.*, ¶ 43 (quoting 58 C.J.S. Mines and Minerals § 178). Unless an instrument's language "expressly provide[s] or necessarily implie[s]" otherwise, "a conveyance of real property transfers to the grantee all title and interest then held by the grantor." *Ash v. Merlette*, 2017 MT 305, ¶ 14, 389 Mont. 486, 407 P.3d 304 (quoting § 70-1-519, MCA).

¶18 The parties agree that the Warranty Deed is unambiguous. It grants an interest in the Property, and then "except[s] and reserve[s] . . . an undivided two thirds of all oil, gas

8

and minerals in, upon or under said lands." A deed reservation "is some right, interest or estate retained by the grantor in the granted premises. It creates a right and privilege for the benefit of the grantor in the land described as granted and withholds it from the operation of the grant." *Missoula v. Mix*, 123 Mont. 365, 369, 214 P.2d 212, 214 (1950) (citation omitted). When a grantee receives the surface lands with the minerals reserved or excepted from the grant, the grantee "gets title to all the surface, and the grantor has a fee simple in the minerals retained." *Libby Placer Mining Co.*, ¶ 39 (quoting 53A Am. Jur. 2d Mines and Minerals § 181). Further, "[w]hatever is excluded from the grant by exception or reservation remains in the grantor as of his former right or title and never passes to the grantee." *Mix*, 123 Mont. at 372, 214 P.2d at 216. Finally, "[a] grant is to be interpreted in favor of the grantee, except that a reservation . . . is to be interpreted in favor of the grantor." Section 70-1-516, MCA.

¶19   Appellants contend that the Warranty Deed did not specify Leonard only owned a 2/3rds interest in the surface estate of the Property and therefore his reservation of a 2/3rds interest in the mineral estate had the legal effect of warranting the remaining 1/3rd interest in the minerals to Appellants, thus leaving Leonard with a 1/3rd interest in the mineral estate of Tracts 2 and 3 and a 1/6th interest in the minerals in Tract 1. However, this interpretation is contrary to the foregoing general principles of deed interpretation and disregards the plain language of the Warranty Deed reserving 2/3rds of *all* the minerals to Leonard. Additionally, it favors the Grantees by placing an implied grant above an explicit reservation. This interpretation devalues the reservation of "an undivided two-thirds of

9

all" mineral rights by holding the explicit fractional interest retains only as much meaning as remains after the implicit 1/3rd grant is satisfied. As this Court has previously stated, "[t]his we may not do." *Wyrick*, 136 Mont. at 173, 175, 346 P.2d at 564-65 (holding that a deed of land followed by the language "including one-half of all oil and gas rights owned by the parties" constituted a reservation of one-half of the minerals to the grantor, and that "[t]o rule otherwise we would be obliged to hold that the clause commencing with the word 'including' had no meaning whatsoever and that it must be disregarded. This we may not do."). *See also Cedar Lane Ranch, Inc. v. Lundberg*, 1999 MT 299, ¶ 24, 297 Mont. 145, 991 P.2d 440 ("This Court will 'neither put words into a deed which are not there, nor put a construction on words directly contrary to their obvious meaning.'" (citation omitted)).

¶20 Conversely, Leonard's interpretation gives full meaning to the Warranty Deed's language. The Warranty Deed reserved to Leonard 2/3rds of "all" mineral interests under the Property. Because his share of the mineral interests at the Warranty Deed's execution was 2/3rds, he reserved his entire mineral estate and severed it from the grant. To the extent that he reserved a greater share of the mineral interests than he owned—he reserved 2/3rds but only owned 1/2 of Tract 1—Leonard argues the reservation only has the effect of reserving his existing 1/2 interest encompassed within the reservation. This interpretation does not disregard the Warranty Deed's express language, nor does it elevate a mere implication above an express clause.

¶21 Further, Leonard's interpretation of the Warranty Deed is consistent with the statutory rule of construction that a reservation in a grant should be interpreted in favor of

10

the grantor. Section 70-1-516, MCA. We relied in part on this statutory rule of construction in *Wicklund v. Sundheim*, 2016 MT 62, ¶ 38, 383 Mont. 1, 367 P.3d 403, to interpret an oil and gas royalty reservation. We applied § 70-1-516, MCA, to assist in construing extrinsic evidence brought in to resolve an ambiguity in a deed's language, and ultimately interpreted the reservation in favor of the original grantors. *Wicklund*, ¶¶ 27-29, 38. In our analysis of § 70-1-516, MCA, we explained the history and long-standing usage of the statute, noting that "[t]his section has been part of the Montana Code since 1895." *Wicklund*, ¶ 28 (citation omitted). This Court has consistently recognized "that the rule of construction for reservations in a grant is governed by this statute, whether the grantor is a public entity or a private individual." *Wicklund*, ¶ 28. *See Mix*, 123 Mont. at 372, 214 P.2d at 215 ("By statutory rule the language of a reservation in a grant is to be interpreted in favor of the grantor, which is a different rule from that which existed at common law and under many other state statutes."); *Ferriter v. Bartmess*, 281 Mont. 100, 103, 931 P.2d 709, 711 (1997) ("While a grant of property is to be interpreted in favor of the grantee, any reservation is to be interpreted in favor of the grantor.").

¶22    We agree with the District Court that based on the unambiguous, express language in the Warranty Deed reserving and withholding from the grant 2/3rds of *all* mineral interests—the same fractional interest owned by Leonard in Tracts 2 and 3—and considering § 70-1-516, MCA, Leonard reserved and retained his entire mineral estate under the Warranty Deed.

11

¶23 *2. Whether the District Court properly considered the chain of title in its interpretation of the deed language?*

¶24 Appellants contend that the unambiguous language of the Warranty Deed conveyed to the Grantees 1/3rd of the mineral interests in the Property. Because the Warranty Deed is unambiguous, they argue that extrinsic evidence of the parties' intent may not be considered to contradict or diminish that grant. Accordingly, Appellants argue the District Court improperly relied on subjective evidence contained in the chain of title to illuminate the circumstances of Irene Messer's ownership and to conclude that Irene Messer knew what Leonard owned because she received her interests through the same instruments, namely their father's estate and deeds from their mother. Appellants assert that evidence of Irene Messer's expectations—what she knew or should have known—constitutes a subjective inference rather than objective evidence, and moreover it was improper to then impute these assumptions to Phillip Messer, her husband and co-grantee under the Warranty Deed, because he had no interest in the Property prior to the Warranty Deed's execution.

¶25 Leonard contends that the District Court did not rely on the chain of title to the Property, but rather it reached its conclusion by interpreting the plain language of the Warranty Deed. After reaching its conclusion, the District Court then considered the chain of title and the parties' relationships for context to reinforce its conclusion. Further, Leonard argues that the chain of title is an objective public record illustrating the context surrounding the extent of the Warranty Deed's grant and reservation. He argues this information, including the conveyance from Leonard's father's estate to Leonard, Irene

12

Messer, and their mother Elizabeth, under which all three received equal interests in the Property, provides objective context demonstrating the parties' ownership interests when the Warranty Deed was executed. Additionally, Leonard argues he could not have intended to convey 1/3rd of the mineral interests in the Property when Irene Messer herself owned the outstanding 1/3rd interest.

¶26 As discussed above, under the Warranty Deed's express language, Leonard reserved his entire mineral estate in the Property. The District Court arrived at this same conclusion before addressing other extrinsic evidence which the court noted supported its analysis. Generally, "an unambiguous deed must be interpreted according to its language as written, without resort to extrinsic evidence of the grantor's intent." *Ferriter*, 281 Mont. at 103, 931 P.2d at 711. However, the objective circumstances of an unambiguous instrument may be considered to provide context and clarify the nature of particular obligations. *Simpson v. Simpson*, 2013 MT 22, ¶ 22, 368 Mont. 315, 294 P.3d 1212. A court does not have "to conduct its analysis in a vacuum . . . . Evidence of the surrounding circumstances, including the situation of the property and the context of the parties' agreement, may be shown so that the judge is placed in the position of those whose language the judge is to interpret." *Broadwater Dev., LLC*, ¶ 22 (citing § 1-4-102, MCA).

¶27 Here, the relevant objective context surrounding the Warranty Deed's execution includes the public records in the Property's chain of title. *See* § 70-21-302(1), MCA ("Every conveyance of real property acknowledged or proved and certified and recorded as prescribed by law, from the time it is filed with the county clerk for record, is

13

constructive notice of the contents thereof to subsequent purchasers and mortgagees.").

When the Warranty Deed was executed, Irene Messer owned 1/3rd and Leonard owned 2/3rds of the undivided surface and mineral interests in Tracts 2 and 3. The Warranty Deed conveyed to the Grantees all of Leonard's surface interest. Not only could Leonard not convey more of the surface estate than he owned, which was 2/3rds, but the Grantees could not assume the Warranty Deed conveyed more than 2/3rds of the surface when Irene Messer herself owned the outstanding 1/3rd interest. The Warranty Deed then reserved to Leonard 2/3rds of the Property's entire mineral estate. Leonard's reservation of 2/3rds of the mineral interests matched the 2/3rds of the surface rights he conveyed to the Grantees. As such, Leonard's reservation of 2/3rds of the mineral interests severed that portion from the surface in Tracts 2 and 3, withholding it from the conveyance.

¶28 Next, as to Tract 1, when the Warranty Deed was executed, Irene Messer owned 1/6th and Leonard owned 1/2 of the surface and mineral estates. As with Tracts 2 and 3, Leonard conveyed to the Grantees all his surface rights—his full 1/2 share—and reserved 2/3rds of all the mineral interests of the Property. However, Leonard could not convey a greater share of the mineral interests than he owned in the surface rights. Because his 1/2 ownership in the mineral interests was encompassed in the 2/3rds interest he reserved, Leonard effectively reserved and retained his entire 1/2 of the mineral estate in Tract 1.

¶29 We agree with the District Court that this objective context supports Leonard's interpretation of the unambiguous Warranty Deed. The District Court properly considered

these circumstances to support its determination that Leonard reserved and retained his entire mineral estate in the Property.

¶30    *3. Whether the District Court correctly determined that estoppel by deed did not apply?*

¶31    Appellants contend that the doctrine of estoppel by deed prevents Leonard from denying the Warranty Deed's plain language granting the Grantees 1/3rd of the mineral interests in the Property. Appellants argue the District Court erred by not applying this doctrine, and improperly premised its decision on extrinsic evidence of the context and circumstances surrounding the Warranty Deed's execution. They assert that under estoppel by deed, the plain language of a deed dictates the result. Because it is improper to consider the equities between the parties, the Grantees' pre-existing mineral interests and knowledge are irrelevant when applying the doctrine. Finally, Appellants ask this Court to extend the doctrine of estoppel by deed by adopting the Texas Supreme Court's rule in *Duhig v. Peavy-Moore Lumber Co.*, 144 S.W.2d 878, 880 (Tex. 1940), which favors the grant when a grant and a reservation conflict.

¶32    Leonard contends the District Court properly declined to apply estoppel by deed and correctly considered the context and circumstances because estoppel by deed is an equitable doctrine requiring an examination of the equities between the parties. Leonard further contends that estoppel in pais is the correct doctrine to apply to the Warranty Deed, which includes an element of detrimental reliance. Leonard argues that because the Grantees owned the outstanding interest, estoppel in pais fails, and he is not estopped from asserting title to the mineral interests.

15

¶33 The doctrine of estoppel by deed prohibits "one party to a deed from asserting as against the other party any right or title in derogation of the deed, or from denying" the terms of the deed. *Norman v. State*, 182 Mont. 439, 443, 597 P.2d 715, 718 (1979) (citation omitted). Estoppel by deed stops "the competent parties to a valid sealed contract, and their privies" from "deny[ing] its force and effect by any evidence of inferior solemnity" and "it applies as against the grantor because of recitals in a deed . . . ." *Hart v. Anaconda Copper Mining Co.*, 69 Mont. 354, 358, 222 P. 419, 421 (1924) (citation omitted). Estoppel by deed enforces the plain language of a deed, preventing the other party from denying the meaning and effect of that language.

¶34 Appellants contend that estoppel by deed precludes consideration of the circumstances of the Warranty Deed's execution because the Deed's express language controls the outcome. However, Appellants' argument assumes that the plain language of the Warranty Deed supports their interpretation; it does not. Instead, the Warranty Deed's express language reserved to Leonard 2/3rds of the Property's entire mineral estate; thus, Appellants' estoppel by deed argument fails. Nevertheless, and as Appellants themselves described it, estoppel by deed is founded on equitable principles preventing parties from "tak[ing] advantage of [their] own wrong." *Mitchell v. Pestal*, 123 Mont. 142, 150, 208 P.2d 807, 811 (1949). The doctrine "'concludes the truth in order to prevent fraud and falsehood, and imposes silence on a party only when in conscience and honesty he should not be allowed to speak.'" *Midland Realty Co. v. Halverson*, 101 Mont. 49, 55, 52 P.2d 159, 161 (1935) (quoting *Van Rensselaer v. Kearney*, 52 U.S. 297, 326 (1851)). Both the

16

Warranty Deed's plain language and the equities support Leonard's position. Leonard and Irene Messer originally received their interests through the same instruments from their father's estate and from deeds by their mother. The Grantees had knowledge of Leonard's existing interest because Irene Messer was the owner of the outstanding interest not encompassed by the Warranty Deed's reservation.

¶35 Appellants ask this Court to adopt the rule from the Texas Supreme Court's decision in *Duhig* as a logical extension of estoppel by deed and to apply it to the Warranty Deed. The *Duhig* rule states that when full effect cannot be given to both the reserved interest and the granted interest, the court will fulfill the granted interest first. *Duhig*, 144 S.W.2d at 880. In other words, if the grantor over-conveys through a warranty deed, the over-conveyance will be taken from the grantor's reserved interest. In *Duhig*, a grantor acquired a parcel of land, except for a reservation of 1/2 of the mineral interests by the previous owner. *Duhig*, 144 S.W.2d at 878. The grantor subsequently conveyed the property to another party but reserved a 1/2 interest in the minerals for himself. The Texas Supreme Court determined that the grantee reasonably believed that the deed granted all the surface estate and all but 1/2 of the minerals. The court applied the rule preferring the grant over the reservation—based on the doctrine of estoppel by deed—to prevent the grantor from keeping the 1/2 of the minerals he attempted to reserve. *Duhig*, 144 S.W.2d at 880.

¶36 We have not yet addressed whether the *Duhig* rule applies in Montana, and we need not do so here. The circumstances surrounding the Warranty Deed are not analogous to

17

those in *Duhig*. In *Duhig*, the grantee was not a party to the deed in which the grantor first received their surface and mineral interests. As such, the grantee was unaware that the grantor did not own the entire mineral estate and could not both convey 1/2 of the minerals and reserve that same amount. Here, Irene and Leonard both received their interests through the same instruments at the same time.

¶37     The North Dakota Supreme Court rejected the *Duhig* rule in similar circumstances where the grantees had knowledge of the grantors' mineral interests. *Gilbertson v. Charlson*, 301 N.W.2d 144, 145, 148 (N.D. 1981). In *Gilbertson*, three children became cotenants after inheriting all their father's interest in a tract of land. Each sibling owned 31.67% of the minerals with the state owning the remaining 5%. *Gilbertson*, 301 N.W.2d at 145. Two of the siblings conveyed their shares to the third, Pauline, under a single warranty deed, reserving and excepting 50% of the mineral interests. Pauline claimed the deed thus conveyed the other 50% of the mineral interests. She further contended that her siblings—the grantors—were estopped from claiming any part of the minerals ostensibly conveyed and asked the court to apply the *Duhig* rule to grant her the full 50% of the mineral estate. *Gilbertson*, 301 N.W.2d at 145-46.

¶38     The court declined to apply the *Duhig* rule to the deed because the grantors and grantees were co-owners. *Gilbertson*, 301 N.W.2d at 148. Unlike *Duhig*, where the outstanding interest was in a stranger uninvolved in the deed execution, in *Gilbertson* the outstanding interest was in the grantee herself. Instead, the court turned to the doctrine of estoppel in pais to determine if the grantors should be precluded from asserting their rights.

18

Estoppel in pais is an equitable doctrine which prevents a party from asserting a right or title if the other party detrimentally relied on its intentional misrepresentations regarding the state of the title and had no way to independently discover the true state of the title. *See Gilbertson*, 301 N.W.2d at 147. The court found estoppel in pais did not preclude the grantors from asserting title to the minerals because the grantees had actual knowledge about the grantors' mineral interests. Pauline knew the grantors together owned only 63.33% of the minerals because she owned the outstanding interest. Accordingly, the grantees "were clearly made aware" that the grantors could not reserve 50% of the minerals *and* convey the other 50%. *Gilbertson*, 301 N.W.2d at 148. The court held that in "these circumstances, there can be no implied warranty that the grantors are warranting what they have reserved"; therefore, the grantors retained the full 50% of the minerals they reserved under the deed. *Gilbertson*, 301 N.W.2d at 148.

¶39 As in *Gilbertson*, the parties here were co-owners of the surface land and mineral interests. The outstanding interest not explicitly encompassed by the Warranty Deed's 2/3rds reservation was held not by a stranger, but rather by the Grantees themselves. Like the North Dakota Supreme Court, this Court has adopted the doctrine of estoppel in pais. In Montana, under estoppel in pais, "the person estopped is considered as having by his admission, declaration, or conduct, misled another to his prejudice, so that it would work a fraud to allow the true state of facts to be proved." *Scott v. Jardine Gold Mining & Milling Co.*, 79 Mont. 485, 495, 257 P. 406, 410 (1927). A person is not estopped if they "did not intend to mislead and the other is not actually misled." *Scott*, 79 Mont. at 496, 257

19

P. at 410. Like the grantees in *Gilbertson*, Appellants contend that by reserving 2/3rds of the minerals, the Warranty Deed also conveyed 1/3rd of the mineral interests. However, as in *Gilbertson*, the Grantees owned 1/3rd of the outstanding interest in Tracts 2 and 3, and 1/6th of the outstanding interest in Tract 1. The Grantees were clearly aware that Leonard could not warrant title to 1/3rd of all the minerals *and* reserve 2/3rds of all the minerals when the Grantees themselves owned the outstanding 1/3rd of the minerals not encompassed by the reservation.

¶40 We agree with the District Court that estoppel by deed does not preclude Leonard from asserting title to the minerals under the Warranty Deed. Both the Warranty Deed's express language and the equities support Leonard's interpretation of the mineral reservation. Neither estoppel by deed nor estoppel in pais prevent Leonard from asserting title to the minerals because the Grantees, as co-owners of the surface and mineral interests in the Property, were not misled by the Warranty Deed's reservation clause.

## CONCLUSION

¶41 The District Court correctly determined that the Warranty Deed reserved to Leonard his entire mineral interest consisting of 2/3rds of all the minerals in Tracts 2 and 3 and 1/2 of all the minerals in Tract 1.

¶42 Affirmed.

/S/ LAURIE McKINNON

20

We Concur:

/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE